Robert E. SCHNEIDER, Jr., et al., Plaintiffs,

v.

COLEGIO DE ABOGADOS DE PUERTO RICO, et al., Defendants.

Civ. Nos. 82–1459, 82–1513, 82–1514, 82–1532 (TR).

United States District Court, D. Puerto Rico.

Sept. 13, 1982.

**1254**

Robert E. Schneider, Jr., Santurce, P. R., pro se and for plaintiffs.

Salvador Antonetti-Zequeira, Jay Garcia-Gregory, San Juan, P. R., Miriam Naveira de Rodón, Santurce, P. R., José Julián Alvarez González, University of Puerto Rico, Río Piedras, P. R., for Justices of Supreme Court.

Pedro A. del Valle Ferrer, Fed. Lit. Div., Dept. of Justice, San Juan, P. R., for Secretaries of Justice and Treasury.

Harry Anduze Montaño, Santurce, P. R., for Colegio & Fundación de Abogados.

Jorge F. Romany, San Juan, P. R., pro se.

Héctor L. Marquez, Hato Rey, P. R., pro se.

Héctor Urgell Cuebas, San Juan, P. R., pro se.

Jorge Souss Shidrewa, pro se.

Oreste V. Ramos Diaz, Santurce, P. R., pro se.

## DECISION AND ORDER

TORRUELLA, District Judge.

The original action in this case, Civil No. 82–1459, is related to issues which gave rise to disbarment proceedings initiated in the Supreme Court of Puerto Rico (hereinafter called the "Puerto Rico Court") against Plaintiffs Robert E. Schneider, Jr. and Héctor R. Ramos Díaz (hereinafter called "Plaintiffs Schneider and Ramos"). Those proceedings were commenced on November 21, 1977 by Codefendant Colegio de Abogados de Puerto Rico (hereinafter called the "Colegio") for the nonpayment of the annual dues owed to the Colegio.[1] At the time

---

1. The Colegio is Puerto Rico's state-wide integrated bar association created pursuant to Law No. 43 of May 14, 1932 (hereinafter Law 43) (4 LPRA 771 *et seq.*). Codefendant Fundación

of the filing of said proceedings Plaintiff Schneider had refused to pay dues since 1974 and Plaintiff Ramos since 1976. After a series of motions, incidents and proceedings, the Puerto Rico Court rendered its decision on the merits on April 5, 1982 and ordered Plaintiffs Schneider-Ramos to pay the pending Colegio dues or face disbarment. (See *Colegio de Abogados de Puerto Rico v. Schneider, et al,* 112 D.P.R. —— (1982), 82 JTS 51). Upon their failure to pay the dues owed, the Puerto Rico Court ordered their disbarment on June 3, 1982.

On June 9, 1982, Plaintiffs Schneider and Ramos filed their present action, purportedly challenging the constitutional validity of Law No. 43 and a companion statute, Law No. 99 of June 29, 1956 (4 LPRA 1001 *et seq.*), alleging violation of their civil rights pursuant to 42 U.S.C. § 1983 *et seq.* and of the First, Fifth and Fourteenth Amendments to the Constitution of the United States.[2]

The complaint seeks declaratory and injunctive relief as well as damages against the Defendants, whom we will classify for purposes of this decision as follows: (1) the Colegio, (2) Carmen Ana Culpeper, Secretary of the Treasury for the Commonwealth of Puerto Rico (hereinafter called the "Sec-

retary of the Treasury") and Héctor Reichard de Cardona, Secretary of Justice of the Commonwealth of Puerto Rico (hereinafter called the "Secretary of Justice"), and (3) José Trías Monge, Carlos V. Dávila, Hiram Torres Rigual, Jorge Díaz Cruz, Carlos Irizarry Yunqué and Antonio S. Negrón, the Chief Justice and Associate Justices, respectively, of the Puerto Rico Court (hereinafter referred to collectively as the "Justices").[3]

The essence of the allegations contained in Plaintiffs Schneider and Ramos' lengthy complaint can be summarized as follows:

(1) Compulsory membership in the Colegio as required by Law No. 43, and as administered by the Colegio, does not have a reasonable relationship to any permissible legislative objective. The statute is overbroad and "chills" the freedom of expression and association rights of those that dissent from the Colegio's ideological and partisan activities yet are compelled to belong thereto in order to engage in the practice of law. It is claimed that the problem is compounded in forcing these dissenters to financially support these activities by the payment of dues and other monetary contributions required by law.[4] Thus Law 43 violates the freedom of expression and asso-

---

Colegio de Abogados, is an organization adjunct to the Colegio which for purposes of these proceedings need not be separately considered.

Section 3 of Law No. 43 (4 LPRA 774) provides specifically that "no person who is not a member [of the Colegio] shall practice law in [the Commonwealth of Puerto Rico]. Section 9 of said Law (4 LPRA 780), as amended by Law No. 73 of June 21, 1962, provides that the Colegio is "authorized to fix the annual dues payable by its members." Section 10 further provides that "[a]ny member [of the Colegio] who fails to pay his dues, although otherwise qualified as a member ... shall be suspended as such member, but may be reinstated on payment of his debt on this account."

**2.** Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202.

**3.** Subsequent to the filing of the original complaint, Francisco Rebollo became a member of the Puerto Rico Court. Plaintiffs have amended their complaints to include Justice Rebollo

as a nominal party defendant for purposes of the requested declaratory and injunctive relief only.

**4.** The first pleading filed in any action in the Commonwealth's Courts requires the attorney to adhere a $1.00 "forensic" stamp, the proceeds of which revert to the Colegio. 4 LPRA § 783. Failure to comply with this requirement is grounds for dismissal of the action. Cf. *De Soto v. Clínica Industrial,* 70 P.R.R. 811 (1950).

In the practice of notarial law in Puerto Rico, which as in other civil law jurisdictions is limited to attorneys, the law also requires the notary-attorney to cancel a special notarial stamp on each original deed and on every certified copy of the same, the proceeds of which also go to the Colegio. See 4 LPRA § 783. Failure to comply with this requirement renders the notary-attorney subject to disciplinary action before the Supreme Court, and prevents the certified copy of the deed from being registered in the Registry of Property. Cf. *Rosario v. Registrador,* 65 DPR 464 (1945).

ciation clause of the First and Fourteenth Amendments. Furthermore, because it raises an irrebuttable presumption to the effect that those who do not pay dues to the Colegio are not qualified to practice law, it is alleged that it also violates the due process clause of the Fourteenth Amendment;

(2) It is claimed that the proceedings before the Puerto Rico Court to seek their disbarment did not grant Plaintiffs Schneider and Ramos a full, fair and meaningful opportunity to be heard; and

(3) It is alleged that there existed a conspiracy between the Colegio and the Justices to deprive those plaintiffs of their right to practice law and of their various civil rights.

Together with the complaint, Plaintiffs Schneider and Ramos filed a Motion for Preliminary Injunction. An order to show cause issued setting the matter for a hearing on June 21, 1982. At the hearing, which resulted in the denial of the preliminary injunction sought, the Justices filed the Motion to Dismiss and/or Motion For Summary Judgment which is the principal subject matter of the present decision.

At the hearing also, three other individual Plaintiffs, Jorge F. Romany (Civil Number 82–1513), Jorge Sous Schidrewa, (Civil Number 82–1514), and Oreste V. Ramos Díaz (Civil Number 82–1532), hereinafter referred to as Plaintiffs Romany, Sous and Oreste Ramos, respectively filed complaints similar to the one filed by Plaintiffs Schneider-Ramos against the Justices, the Colegio and the Secretaries of Justice and Treasury. However, these new complaints contain some important differences from the Schneider-Ramos allegations. Plaintiffs Romany, Sous and Oreste Ramos do

not allege that they have been disbarred. They in fact have been paying their Colegio dues. They claim, however, the right to declaratory and injunctive relief from continued mandatory dues payment and Colegio membership by reason of the alleged unconstitutionality of Law No. 43, as per allegations similar to the Schneider-Ramos complaint, as previously summarized. They also make a claim for damages. Plaintiff Oreste Ramos' complaint also alleges that he attempted without success to pay the 1982 Colegio dues, with a limit as to the ideological activities for which these dues could be used, but that this procedure was rejected by the Colegio. Lastly, Plaintiffs Romany, Sous and Oreste Ramos make no conspiracy allegations. These cases were consolidated with the original Schneider-Ramos suit (Civil No. 82–1459).

The issues raised by Defendant Justices in the referred Motions [5] are as follows:

(1) That the complaints fail to state a claim upon which relief can be granted;

(2) That this Court lacks jurisdiction in that this is an attempt to review a judgment of the Puerto Rico Court, which may only be done by the Supreme Court of the United States;

(3) That the actions are barred by res judicata-collateral estoppel principles; [6]

(4) That this Court has been asked to intervene in an ongoing judicial proceeding in violation of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 639 (1971);

(5) That the Justices are protected by judicial immunity;

(6) That these actions seek to enjoin the collection of taxes, in violation of the Butler Act (48 U.S.C. § 872).

---

All the stamps referred to herein are sold by the Treasury Department of the Commonwealth of Puerto Rico, and the monies collected by personnel of said Department are remitted to the Colegio.

**5.** Although the original Motion referred to only Plaintiffs Schneider-Ramos, they have been made extensive to the other Plaintiffs as well.

**6.** In this respect, it is claimed that any attempt by Plaintiffs Schneider-Ramos to reserve federal issues pursuant to *England v. Louisiana Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), is invalid.

The Colegio filed a Motion to Dismiss similar to the Justices. The Secretary of Justice and Treasury also filed a Motion to Dismiss, but limited to the issues raised by the Tax Injunction Act and the Butler Act.

The starting point to a discussion of the issues raised in the present cases is an understanding of the Puerto Rico Court's decision in *Colegio v. Schneider et al,* supra.

## I. THE PUERTO RICO COURT'S DECISION

The opinion in *Colegio v. Schneider, et al,* supra,[7] is as revealing for what it fails to decide as for what it does decide.

At the outset, the Puerto Rico Court clearly establishes the premises upon which it renders the opinion. To begin with, it indicates that its decision concerns only those attorneys who, out of an original total of ninety-nine lawyers against whom a complaint was filed by the Colegio, still refuse to pay the dues owed. In this respect it specifically mentions only Plaintiffs Schneider and Ramos, whom the Puerto Rico Court indicates, contend that the order to show cause issued by that Court concerning their possible separation from the practice of law for failure to pay the Colegio dues, "is at variance with the *Constitution of the Commonwealth of Puerto Rico* " (emphasis supplied). *Id.* at p. 1. In this respect the Court reduces their contentions to four points, which are:

"... 1st, that the Legislature lacks the power to regulate the practice of law, inasmuch as this power is within the province of the Supreme Court of Puerto Rico; 2nd. that they cannot be forced to become members of the Bar; 3rd. that the provisions of Act No. 43 of May 14, 1932 (4 LPRA 771 *et seq.*) establishing the payment of dues, is void because it violates the freedom of speech and associ-

ation; and 4th, that the amounts collected by virtue of the dues required as a condition to practice the legal profession, as well as those received from the compulsory purchase of notarial and bar stamps, are impermissibly used for purposes foreign to the Bar's duties." (*Id.* at pp. 1–2).

The discussion of the first issue contains both matters of direct and of tangential interest to the present case. In it the Puerto Rico Court considers the historical background of the Colegio, founded originally by Royal Decree in 1840 and "suppressed by . . . the United States Military Government on the Island", which established in its place the Bar Association of Puerto Rico, "... a colorless entity, which was voluntary and which led a precarious life until the present [Colegio] was created by Act No. 43 . . ." *Id.* at p. 3. It confirms that the Colegio's funds come mainly from the annual dues and from the proceeds of the aforementioned "forensic" and notarial stamps. Id. at p. 4. In affirming the inherent right of the Puerto Rico Court to establish compulsory membership in the Colegio, the decision holds that Law No. 43 does not infringe upon that state-created right because it "is only advisory, not binding." *Id.* at p. 5. Lastly, it holds that Law No. 43 meets a legitimate public purpose of "reviv[ing] one of our most ancient and respected institutions, which has an unquestionable value not only for the benefit of the strict interest of a class, but also for the good operation of justice in our country and *the social advancement of the community.*" (Emphasis supplied). *Id., at p. 5.

The decision next upholds the constitutionality of compulsory membership pursuant to Article II, Section 6 of the *Constitution of Puerto Rico,* and holds that certain cases decided prior to its approval in 1952,[8] to the effect that both Colegio membership

---

7. The citations from this decision are from the official translation of the decision which is found as Exhibit 10 of the Justices' Appendix of Exhibits in support of the Petition for Writ of Mandamus or Prohibition.

8. *In Re Bosch,* 65 P.R.R. 232, 235 (1945), *Bar Ass'n v. Fajardo,* 51 P.R.R. 512 (1937).

and the payment of dues [9] thereto are a prerequisite to the practice of law in Puerto Rico, are still valid law. *Id.* at p. 8.

The Puerto Rico Court next considers the question of whether or not a member has the right to object to the use given to the funds he personally contributes. Confessing to "the record [being] short of information with regard to this point" (*Id.* at p. 9), the Puerto Rico Court nevertheless deems it advisable to state the general principles governing the *Colegio's* right to freedom of speech. In doing so the decision looks to what it believes to be a civil law tradition, wherein bar associations were not "mere guilds immersed in the defense of their class interests" *Id.* at p. 9. Thus the Court finds that "in France, whose experience echoe[s] . . . [that of] many other countries, the Bar's role was, from time immemorial, a primarily political one . . . [where] [t]he Bar took active part in the country's principal political movements, both before and after the Revolution." *Id.* It considers that a similar situation existed in the Spanish Bar, from whom, earlier in its opinion, the Puerto Rico Court finds the sources of the Colegio's lineage. *Id.* at p. 23. Thus, coming to the Colegio, the Puerto Rico Court holds that "it may engage in any activity authorized by the Legislature of Puerto Rico or by [that] Court, provided such activity is rationally linked to the purposes expressed in Act No. 43" or in an order issued by the Puerto Rico Court. *Id.* at p. 10. Furthermore, the decision holds that the Colegio enjoys "ample freedom of speech under the provisions of art. II, Sec. 4 of the *Constitution [of Puerto Rico]*." (emphasis supplied). *Id.* In exercising this freedom of speech, the Colegio, in representation of the majority of its members, can-

not be curtailed by dissident members even if they enjoy their own freedom of speech: "In the case of Puerto Rico, the [Colegio] need not be a quiet and blushing entity, afraid to use the voice granted to it by the very pluralistic purpose it should serve, although such is not its only *raison d'être.*" See *Id.* at p. 10.

The decision thus reaches a discussion of the Colegio's use of compulsory "contributions." [10] The Puerto Rico Court first concludes that the record fails to establish the specific activities objected to by Schneider and Ramos, nor the part of their contributions which are devoted to said activities. This, however, does not deter the Puerto Rico Court from "going into the constitutional problem." *Id.* at p. 11. Citing from various federal cases, among them *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961); *Brotherhood of Railway & Steamship Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *Railway Employes' Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) and *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the opinion holds that "the freedom of speech clause contained in Art. II, Sec. 4 of the *Constitution of Puerto Rico* is not narrower than that given by the United States Supreme Court to the First Amendment in this context." (emphasis supplied). *Id.* at p. 14. Thus, not only are compulsory membership and *dues* constitutional, but "the [Colegio] may constitutionally pronounce itself on ideological matters. On the other hand, lawyers who dissent from such pronouncements . . . enjoy, under the *Constitution of Puerto Rico,* the right to raise objection to the use of their contributions or of part thereof for ideological activ-

---

**9.** Although there is a possible distinction between funds received from annual dues and those received from the proceeds of the stamps in question, the opinion deals almost exclusively with the dues payments. For example, at the end of the discussion of this particular issue, the decision states: "Up to this point we have analyzed the validity of compulsory membership or of compulsory payment of dues and

cancellation of stamps." Yet the text of the discussion fails to mention anything but the dues issue.

**10.** Although the term "contributions" seems to imply both the dues and the monies collected from stamps, again as pointed out in footnote 9 herein, the opinion only discusses *dues.*

ities they do disapprove" (emphasis supplied). *Id.*

The remainder of the opinion deals with the provision of an *Abood*-like remedy for the dissenters, which remedy will be formulated by the Colegio. The Colegio is required to devise a method whereby the contributions of a dissenting member shall not be used for ideological purposes.[11] This remedy must be effectuated not later than the date set for collecting the next annual dues [12] and after giving members an opportunity to express themselves on the matter. The method formulated requires all objections to be made by the dissenters at the time the dues are paid.[13] The Colegio must follow the principles of *Street, Allen* and *Abood,* and must create a panel of "renowned attorneys who, among other functions [14] [will] pass on, subject to review by [the Puerto Rico] Court, [1] the classification of the activities [of the Colegio], [2] the proportion between the ordinary activities and the ideological ones, [3] the validity of the objections [of] a member . . ., and [4] over any other controversy arising from the remedy and its application." *Id.* at p. 16. Dissenters must pay their dues to the Colegio until the remedy is implemented, and the Colegio is required to deposit in a separate account "an amount equivalent to the proportion between the sums destined to ideological purposes—as the term may be temporarily understood by the Board of Governors—and the total expenses of the [Colegio]." Id. at p. 17.

In summary, as we understand *Colegio de Abogados v. Schneider,* supra, it stands for the following propositions:

(1) The only respondent parties which the Puerto Rico Court understood to have litigated on the merits were Plaintiffs Schneider and Ramos;

(2) The decision holds that Law No. 43 on its face is valid;

(3) The decision holds that in the administration of Law No. 43, the Colegio can engage in ideological activities;

(4) The decision holds that notwithstanding these ideological activities, Schneider and Ramos must belong to the Colegio and must pay annual dues and attach the "forensic" and notarial stamps previously alluded to, as a condition to practicing law in Puerto Rico. As to the *dues only,* a remedy of indeterminate future success is provided by the Puerto Rico Court, to be administered principally by the Colegio and a committee named by the Colegio from among its membership. Furthermore, as structured by the remedy, a large share of the burden of the mechanics of objecting to the use of the membership funds is placed on the dissenting lawyers; and lastly

(5) The decision is grounded *solely* on Puerto Rican Constitutional and Statutory law.

Put in the inverse, in the *Schneider* case:

(1) The Puerto Rico Court studiously avoids deciding any issue on *Federal* constitutional or statutory grounds;

(2) Neither Plaintiffs Sous nor Oreste Ramos were in any manner involved as parties or otherwise. In the case of Plaintiff Romany, although the subject of a complaint for nonpayment, his payment at an early stage of the proceedings impeded his participation in the merits of the case; [15]

(3) The use of monies collected from dissidents through "forensic" and notarial stamps is allowed for the ideological activities of the Colegio, without restriction; and

(4) The Puerto Rico Court implicitly recognizes that the Colegio has engaged in

---

11. Thus the Colegio polices itself.

12. Which is January 1, 1983.

13. This apparently means that lawyers must decide beforehand whether they will be year-long dissenters, without knowing, at the time the choice is made, the nature of the activities to which they are objecting.

14. The decision makes no reference to any other functions for this panel.

15. See pages 2–3 of Exhibit 1 attached to the Justice's Motion to Dismiss and/or for Summary Judgment.

ideological activities during the past period for which the Schneider-Ramos dues are claimed, yet orders them to pay dues for said periods of time.

With this background, we proceed to discuss the merits of the pending matters.

## II. ALLEGED FAILURE TO STATE A CLAIM

■ It should be noted that in considering a motion to dismiss for failure to state a claim for relief, all of the allegations of the complaint should be construed in the light most favorable to the pleader, and should be accepted as true. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965); *Hochman v. Board of Education,* 534 F.2d 1094 (C.A. 3, 1976); *Dacey v. New York County Lawyers Ass'n.,* 423 F.2d 188 (C.A. 2), *cert. den.,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1969), *Robinson v. Stanley Home Products, Inc.,* 272 F.2d 601, 602 (C.A. 1, 1959). The pleadings should be read as a whole and viewed broadly and liberally, in conformity with the mandate of F.R.C.P. 8(f). Furthermore, reasonable factual inferences should be drawn to aid the pleader, and ambiguities resolved in his favor. *Quiñones v. United States,* 492 F.2d 1269, 1273 (C.A. 3, 1974); *Gray v. Occidental Life Ins. Co.,* 387 F.2d 935 (C.A. 3, 1968), *cert. den.,* 391 U.S. 926, 88 S.Ct. 1825, 20 L.Ed.2d 665 (1968).

We thus explore Defendants' first contention.

### a. *Non-Conspiracy Allegations*

■ Leaving aside for the moment the conspiracy allegations contained in Paragraphs 57 through 60 of the Schneider-Ramos complaint, as well as other issues presently to be discussed, we cannot say that there is a failure to state claims which are cognizable under *Federal* substantive law.[16] See *Abood v. Detroit Board of Education,* supra; *Arrow v. Dow,* 636 F.2d 287 (C.A. 10, 1980). Although hardly models of clarity, a fair reading of the complaints shows that Plaintiffs allege sufficient facts from which we can conclude that they protest their being mandatorily required to belong to an organization which is allegedly used for ideological and partisan activities, and that they further protest the use for those purposes of the mandatory dues and stamp funds collected by the Colegio.

In *Arrow v. Dow,* supra, an action claiming deprivation of civil rights in violation of 42 U.S.C. § 1983 was filed by lawyers and members of the integrated State Bar of New Mexico, which is created pursuant to rules adopted by the Supreme Court of New Mexico. Those rules require all lawyers in New Mexico to be members of the state bar and to pay an annual license fee. Plaintiffs therein sued the Board of Bar Commissioners and its members claiming that the Board had hired a legislative lobbyist to influence the state legislature "on issues of public policy." *Id.* at p. 288. They claimed that " '[s]aid actions are of an economic and political nature of which Plaintiffs do not approve, in which they have no voice, and which are not legitimate functions of an integrated bar.' " The complaint went on to allege that these " 'actions in combination have forced Plaintiffs into adopting and supporting an ideological conformity with which they disagree.' " Defendants moved to dismiss on the grounds that the District Court lacked subject-matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted.

The Court of Appeals rejected both arguments stating that:

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

---

16. See 42 U.S.C. § 1983: "Every person who, under color of any statute ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the

"The complaint adequately alleges that the Board, acting under the color of state law, deprived plaintiffs of rights secured under the First, Fifth, and Fourteenth Amendments to the United States Constitution. The complaint attacks the administration of the rules governing all lawyers rather than action relating to a single lawyer.... The complaint is sufficient without charging the specific activities or the specific ideologies to which plaintiffs object." (citations omitted). *Id.* at 289.

We find the present allegations indistinguishable from those in *Arrow v. Dow,* supra. See also *Abood v. Detroit Board of Education,* supra, 431 U.S. at page 213, 241, 97 S.Ct. at page 1788, 1802. The factual allegations in the complaints, challenging the use of mandatory Colegio membership and financial contributions for ideological purposes, state a cause of action under 42 U.S.C. § 1983.

Even assuming the *facial* validity of Law No. 43 pursuant to the plurality opinion in *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), neither that case nor any other with which we are familiar permits the inference that an integrated bar can be used to compel financial contributions for ideological purposes.

In *Railway Employes' Dept. v. Hanson,* supra, and *Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1960), the Supreme Court held that mandatory dues used to finance collective bargaining activities in a union shop did not violate the members' rights under the First Amendment. Relying on its decisions in *Street* and *Hanson,* a plurality of the Supreme Court held in *Lathrop* that compelled membership in a state bar and exaction of compulsory dues to finance the bar did not deprive plaintiffs of their rights to freedom of association. But the *Lathrop* court specifically declined on the basis of an inadequate record, to decide whether the use of bar fees to support legislation to which the lawyers were "ideologically opposed" deprived them of their rights to free speech, supra, 367 U.S. at 843–848, 81 S.Ct. at 1838–1840. This issue, in the context of a labor union, was squarely presented to the Supreme Court in *Abood.*

In that case, plaintiffs, who were state employees, claimed that portions of a mandatory employment service charge levied upon nonunion members (equal to union membership fees) were being used to support ideological and political causes that they did not wish to support. The Court concluded that this was a violation of the First Amendment. The Court states:

"One of the principles underlying the Court's decision in *Buckley v. Valeo* [424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659] ... was that contributing to an organization for the purpose of spreading a political message is protected by the First Amendment....

The fact that the appellants are compelled to make, rather than prohibited from making, contributions for political purposes works no less an infringement of their constitutional rights. For at the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State... And the freedom of belief is no incidental or secondary aspect of the First Amendment's protections:

'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.' ...

These principles prohibit a State from compelling ... any of the appellants to contribute to the support of an ideological cause he may oppose as a condition of holding a job as a public school teacher." (Citations omitted). 431 U.S. at 234–235, 97 S.Ct. at 1799.

In the most recent *Arrow v. Dow,* 544 F.Supp. 458 (D.C.N.Mex.1982) the District Court, relying on *Abood,* held that said decision prohibited the use of mandatory bar dues to finance the lobbying activities of the New Mexico Bar Association because such actions required the support of ideological activities by dissidents, thus violating their First and Fourteenth Amendment rights.

We do not decide the merits of the nonconspiracy allegations at this time. "All that we decide is that the general allegations in the complaints, if proved, establish a cause of action under the First and Fourteenth Amendments." *Abood,* supra, 431 U.S. at 237, 97 S.Ct. at 1800. Cf. *In Re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Examining Board v. Flores de Otero,* 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976).

### b. *The Conspiracy Allegations in the Schneider-Ramos Complaint*

In the Motion to Dismiss of the Justices it is claimed that "Paragraphs 57 through 60 [of the Schneider-Ramos complaint] pretend, in the most irresponsible way possible, to allege on 'information and belief' an ongoing 'conspiracy' between Defendants Colegio and Justices. Positively no facts, whether specific or otherwise, are alleged in the complaint." Plaintiffs Schneider and Ramos contend that "[t]he allegations of conspiracy are based on information and belief and all refer to the general allegations contained in paragraphs 47 through 53, inclusive, of the complaint and all, naturally, depend on discovery for the development of the necessary factual elements for the claim."

■ We start with the proposition "that complaints cannot survive a motion to dismiss if they contain conclusionary allegations of conspiracy but do not support their claims with reference to material facts."

*Slotnick v. Staviskey,* 560 F.2d 31, 33 (C.A. 1, 1977), *cert. den.,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Slotnick v. Garfinkle,* 632 F.2d 163, 165–166 (C.A. 1, 1980); *Dunn v. Gazzola,* 216 F.2d 709, 711 (C.A. 1, 1954); *Kadar Corp. v. Milbury,* 549 F.2d 230 (C.A. 1, 1977).

We must look to the complaint to determine whether this test has been met.

In Paragraph 57, Plaintiffs charge that the "Justices and the Colegio, have acted and continue to act, individually and/or collectively, and on information and belief, have entered into a conspiracy, and continue to conspire, to injure and harm plaintiffs by depriving them of their license and/or right to practice law in Puerto Rico." Paragraph 60 further alleges that they "continue to conspire, to injure and harm plaintiff Robert E. Schneider, Jr. by continued and public harassment, censure, sanction, rebuke and criticism and by denying to said plaintiff a fair and impartial forum for the consideration and resolution of petitions and pleadings filed before the Supreme Court by said plaintiff in this and other cases."

We then turn to Paragraphs 47 through 53, which deal with the allegations that a "full, fair and meaningful opportunity to be heard", and due process, were denied to Plaintiffs Schneider-Ramos by the Puerto Rico Court and its Special Examiner. Paragraph 48 lists actions by Defendants which they allege support these conclusions. Succinctly stated, Plaintiffs Schneider-Ramos allege a course of conduct by Defendant Justices and the Colegio. We paraphrase our understanding of the main contentions as follows:

(1) The failure of Colegio on numerous occasions to notify to Schneider-Ramos various matters related to the charges, including the complaint, pleadings, exhibits and briefs. Some of these deficiencies were later corrected by order of the Puerto Rico Court;

(2) The refusal of the Puerto Rico Court to designate a Special Examiner to hear

and admit evidence, a situation which the Puerto Rico Court later, *motu propio,* corrected after a hearing before the Court was requested pursuant to its rules. This later hearing was never held, nor was the request for said hearing ever ruled upon;

(3) The denial by the Puerto Rico Court of requests for information from the Colegio for the purpose of identifying activities and expenditures of an ideological nature, a situation later partially rectified by the Puerto Rico Court in the sense that the Examiner was directed to order the Colegio to produce *Abood* information, but this was never done despite Plaintiffs' efforts with the Puerto Rico Court and Examiner;

(4) Matters related to the failure by the Examiner to grant a "meaningful" hearing, among which are: (a) that the hearing was held on December 5, 1978 and recessed at noontime, yet the Examiner filed his report at 3:03 p. m. of that same day, but dated December 4, 1978; (b) that the said Report failed to discuss any of the evidence presented by Schneider-Ramos at the December 5th hearing, including 19 exhibits of documentary evidence, one of which consisted of the 12 annual meeting programs, nor the oral evidence presented by Schneider-Ramos; and (c) that the Puerto Rico Court never took any action on Plaintiffs Schneider-Ramos' objections to the Examiner's report; and

(5) That all of the Justices are active members of the Colegio, that a majority of them have been on its governing board or otherwise participated in its affairs and activities, and that one of the Justices is the brother of one of the Colegio's lawyers, who is also a candidate for the office of President of the Colegio.

■ To establish a cause of action based on conspiracy, a plaintiff must allege and show that the defendant agreed to commit an illegal act with another person. *Crowe v. Lucas,* 595 F.2d 985 (C.A. 5, 1979). Although conspiracies are rarely proven by direct evidence or by *viva voce* admissions, thus often requiring the use of circumstantial evidence, the complaint must at least allege overt acts which are related to the formation or furtherance of a conspiracy. *Rosaly v. Ignacio,* 593 F.2d 145, 152 (C.A. 1, 1979). Such a claim requires "at least minimum factual support of the existence of a conspiracy." *Francis-Sobel v. Univ. of Maine,* 597 F.2d 15, 17 (C.A. 1, 1979). The allegations must allow at least an inference from the circumstances that the defendants had a meeting of the minds and thus reached an understanding to bring about the conspiracy's objectives. *Hampton v. Hanrahan,* 600 F.2d 600, 620–623 (C.A. 7, 1979), *cert. granted in part, reversed on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam).

■ Even viewing these allegations in the light most favorable to Plaintiffs Schneider-Ramos pursuant to the standards previously indicated, we cannot conclude that their complaint passes procedural muster. This Court "need not conjure up unpleaded facts to support . . . conclusionary suggestions." *Slotnick v. Staviskey,* supra at p. 33. There is a clear distinction between allegations to the effect that a litigant was denied due process or a meaningful hearing vis-a-vis allegations that such actions are the result of a conspiracy. It *may* be that Plaintiffs Schneider-Ramos have alleged facts to support the lack of due process or of a meaningful hearing.[17] It is another thing to say that they have met the initial burden of alleging *facts* to the effect that this situation resulted from a *conspiracy.* Cf. *Slotnick v. Staviskey,* supra, at p. 34. See also *Rosaly v. Ignacio,* supra; *Francis-Sobel v. Univ. of Maine,* supra; *Henzel v. Gerstein,* 608 F.2d 654 (C.A. 5, 1979); *Mosher v. Saalfeld,* 589 F.2d 438 (C.A. 9, 1978) (per curiam).

The conspiracy allegations against Defendant Justices and the Colegio are thus DISMISSED.

---

**17.** That is an issue to be decided separately later in the opinion.

### c. *The Immunity Issues*

Because the immunity issues raised by the Justices and the Colegio raise issues related to whether this Court can grant any relief to Plaintiffs in the nonconspiracy allegations, it is appropriate that they be addressed at this time. Plaintiffs seek declaratory, injunctive, and damage remedies from both the Justices and the Colegio.

#### (1) *From Damages*

■ It is clear that judges are immune from liability for damages for acts committed within their judicial jurisdiction notwithstanding that the claim for damages is brought under 42 U.S.C. § 1983. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). There is no question in our mind but that the actions challenged vis-a-vis the Justices, whether as regards the disbarment proceedings of Plaintiffs Schneider and Ramos, or as related to their power to regulate the bar and administer Law No. 43 and related legislation, are judicial and quasi-judicial in nature thus immunizing the Justices from liability for damages. Therefore, all claims for damages against the Justices must be DISMISSED.

■ The damage claims against Colegio must be considered in a bifurcated manner. Colegio alleges that it is entitled to prosecutorial immunity pursuant to *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). That case extended to § 1983 actions the common law doctrine of absolute immunity from damages for "initiating ... and ... presenting the State's case." *Id.* at 424 U.S. at 431, 96 S.Ct. at 995. It appears evident that in filing charges against Schneider-Ramos in the Puerto Rico Court, the Colegio was acting

in a prosecutorial capacity pursuant to the requirements of Section 2(g) of Law No. 43, 4 LPRA 773(g). Thus, the Colegio is immune from any liability for damages by reason of its actions in initiating and prosecuting Plaintiffs Schneider and Ramos' disbarment before the Puerto Rico Court. Any such claims for damages are DISMISSED.

■ Of course the damage claims against Colegio are not limited to their prosecutorial activities. Both as to Plaintiffs Schneider and Ramos, as well as to Plaintiffs Romany, Sous and Oreste Ramos, there are damage claims based on the use to which the Colegio has put the funds received from Plaintiffs' dues and from the notarial and "forensic" stamps. Such activities of the Colegio are obviously not within its prosecutorial duties as contemplated in *Imbler v. Pachtman,* supra. Particularly after the decision in *Abood,* we can perceive of no reason why those damage claims should be dismissed, but only with respect to the use of funds *after* the *Colegio v. Schneider* judgment. We, of course, intimate no opinion as to whether any damages can in fact be proven.

#### (2) *From Declaratory and Injunctive Relief*

■ The Justices also claim judicial immunity from subjection to declaratory and/or injunctive relief.[18] For the sake of attempted clarity, this issue, although related in *this* case to other questions still to be discussed in this opinion,[19] will be considered separately at this time.

Interestingly enough both the Justices, who claim such immunity, and Plaintiffs, who oppose such claim, rely on *Supreme Court of Virginia v. Consumers Union,* supra, as supporting their respective positions.

In that case, which was filed pursuant to 42 U.S.C. § 1983, the Supreme Court of

---

**18.** The Colegio, of course, makes no such claim. See *Supreme Court of Virginia v. Consumers Union,* supra, 446 U.S. at pp. 736–737, 100 S.Ct. at pp. 1976–1977; *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**19.** Namely the *Rooker* and res-judicata-collateral estoppel allegations.

Virginia, the Virginia State Bar and the Chief Justice of the Virginia Court [20] were sued in federal court by a consumer group which requested a declaratory judgment and injunctive relief, claiming the invalidity of a provision of the State Bar Code promulgated by the Virginia Court as being contrary to the First and Fourteenth Amendments.

The Virginia Court claimed it had inherent authority to regulate and discipline attorneys, as well as statutory authority.[21] It also had ruled that it had authority to promulgate and amend rules prescribing a code of ethics governing the professional conduct of lawyers.[22] Violations of these rules were adjudicated in the last instance before the Virginia Court, such actions being instituted either by the Virginia State Bar or at the behest of the Virginia Court.[23]

After various proceedings lasting throughout a five-year period, a three-judge District Court declared the rule in question unconstitutional on its face and enjoined the defendants from enforcing the said rule. This ruling was appealed on the grounds that *judicial* immunity foreclosed the issuance of declaratory and injunctive relief against the Virginia Court and its chief judge.

The Supreme Court held "that in *promulgating* disciplinary rules the Virginia Supreme Court acted in a legislative capacity" (emphasis supplied). *Id.* 446 U.S. at 731, 100 S.Ct. at 1974. As such the Virginia Court was entitled to the same type of immunity as would be forthcoming to the Virginia Legislature:

"... [T]here is little doubt that if the Virginia Legislature had enacted the State Bar Code and if a suit had been brought against the legislature, its com-

mittees, or members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity." (Footnotes omitted). *Id.* 446 U.S. at 733–34, 100 S.Ct. at 1975. Thus the Virginia Court could not be forced to *amend* its code in any particular fashion by way of § 1983 equitable relief.

But, the Supreme Court found, the Virginia Court in addition to its legislative functions also has judicial and executive (i.e. enforcement) functions vis-a-vis the State Bar Code. With regards to the *enforcement* functions,[24] the Supreme Court specifically ruled that "the Virginia Court and its chief justice properly were held liable." *Id.,* 446 U.S. at 736, 100 S.Ct. at 1976. "[T]he Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were." *Id.* See also, *Id.,* 446 U.S. at 736–737, 100 S.Ct. at 1976–1977 specifically footnotes 15 and 16.

The Supreme Court then indicated that it would not decide whether judicial immunity would bar *prospective* enjoinment of the Virginia Court's *adjudicative* role in connection with an invalid rule. *Id.* 446 U.S. at 736, 100 S.Ct. at 1976. However, the opinion contains strong *dicta* to the effect that such a result is a distinct possibility. It points out that the Supreme Court has never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts. *Id.* 446 U.S. at 735, 100 S.Ct. at 1976. It then discusses the split between the Court of Appeals on this issue, the Second, Fourth and Seventh Circuits denying the immunity

---

**20.** And other defendants not relevant to the present issues.

**21.** As does the Puerto Rico Court. See *Colegio v. Schneider,* supra, at p. 5.

**22.** Also the Puerto Rico Court. 4 L.P.R.A. 773(f)

**23.** Similar to Puerto Rico. 4 L.P.R.A. 773(g); *In re González Blanes,* 65 P.R.R. 357 (1945).

**24.** *Id.*

with the Eighth, Ninth and District of Columbia Circuits holding the opposite view. *Id.,* footnote 13. In stating that the Supreme Court has not addressed the question the following language is of interest:

"Although we did not address the issue, a state judge was among the defendants in *Mitchum v. Foster,* 407 U.S. 225 [92 S.Ct. 2151, 32 L.Ed.2d 705] (1972), where the Court held that s1983 served to pierce the shield of 28 U.S.C. s2283 against a federal court enjoining state-court proceedings. The Court did say, quoting from *Ex parte Virginia,* 100 U.S. 339, 346 [25 L.Ed. 676] (1880), to this effect, that s1983 was designed to enforce the provisions of the Fourteenth Amendment against all state action, whether that action be executive, legislative or *judicial.* The Court also noted that the proponents of s1983 at the time it was enacted insisted that state courts were being used to harass and injure citizens, perhaps because they were powerless to stop deprivations or were in league with those who were bent upon abrogating federally protected rights. 407 U.S., at 242 [92 S.Ct., at 2161]." (emphasis in the original; *Id.,* footnote 14).

In the present cases, the ultimate goal sought by Plaintiffs is, at the very least, the non-enforcement of Law No. 43 by the Puerto Rico Court, its Justices and the Colegio. In our opinion *Supreme Court of Virginia v. Consumers Union,* supra, does not bar such a goal.

We need not decide, for present purposes, whether future *judicial* actions of the Puerto Rico Court are subject to § 1983 equitable relief.

### III. ALLEGATIONS RELATED TO ROOKER [25]

It is the contention of the Justices and the Colegio that this Court lacks jurisdiction in the present cases because they seek "to annul the disciplinary judgment rendered against Plaintiffs by the Supreme Court of Puerto Rico and to enjoin the effect of enforcement of said judgment", all of which is allegedly prohibited by *Rooker v. Fidelity Trust Co.* See "Memorandum of Law in Support of Defendants (sic) Justices Motion to Dismiss and/or For Summary Judgment", at page 6. Certainly, if this is true as to Plaintiffs Schneider-Ramos, it is not the case as to Plaintiffs Romany, Sous, and Oreste Ramos as to whom no disciplinary judgment has been entered by the Puerto Rico Court. We assume, therefore, that the *Rooker* arguments are limited to Plaintiffs Schneider and Ramos.

In *Rooker,* a suit in equity was filed in federal district court ... "to have a judgment of a Circuit Court of the State declared null and void, and to obtain other relief dependent on that outcome." *Id.* 263 U.S. at 414, 44 S.Ct. at 149. It was alleged that the judgment rendered was in violation of the contract clause of the Constitution and of the due process and equal protection clauses of the Fourteenth Amendments. The district court dismissed for lack of jurisdiction. In affirming this action the Supreme Court said:

"It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal by the plaintiffs. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. Under

---

**25.** *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the district courts is strictly original." 263 U.S. at 415–16, 44 S.Ct. at 150. (Citations omitted).

Thus, the *Rooker* decision stands for the proposition that "a federal district court is without jurisdiction to redetermine federal constitutional issues which have been litigated and decided by a prior *final judgment* of a state court." Justices Memorandum, supra, at page 9. (Emphasis supplied).[26]

In the Memorandum, counsel for Defendant Justices allege that "[t]he Supreme Court of Puerto Rico held that under the Puerto Rico and *Federal* Constitutions the plaintiffs broad-based attack against the integrated bar and against the duty to pay dues to the bar and purchase forensic and notarial stamps failed." *Id.* at page 7. Of course this is a clear misstatement of the basis for the Schneider-Ramos ruling. We need not here repeat the numerous instances in which the Puerto Rico Court emphasizes its reliance *solely* on Puerto Rican Constitutional and statutory grounds.[26A] The Puerto Rico Court's statement to the effect "that the freedom of speech clause contained in Article II, Sec. 4 of the Constitution of Puerto Rico is not narrower than that given by the United States Supreme Court to the First Amendment in this context", is hardly a decision on Federal constitutional grounds, but rather, *reinforces the Puerto Rican substantive basis* of the *Schneider-Ramos* decision. Nor does the adoption of an *Abood*-like remedy, applied to a case decided pursuant to local standards, convert the *Schneider-Ramos* decision into a Federally-based decision. All reference to federal law in that case is purely for comparative purposes. Such a

remedy when used to implement a finding based on Puerto Rican substantive law becomes a Puerto Rican remedy and does not change the Puerto Rican nature of the decision. The Puerto Rico Court only incidentally refers to decisions of the Supreme Court in determining the meaning of state law. Cf., *State Tax Comm'n v. Van Cott,* 306 U.S. 511, 514, 59 S.Ct. 605, 606, 83 L.Ed. 950 (1938).

The Puerto Rican basis of the *Schneider-Ramos* decision, and its studied avoidance of federal constitutional law as its *ratio decidendi,* in fact results in the elimination of any possible grounds for appeal or certiorari to the Supreme Court of the United States. 28 U.S.C. § 1258(2), (3). Cf. *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 566–568, 97 S.Ct. 2849, 2852–2853, 53 L.Ed.2d 965 (1977); *Durley v. Mayo,* 351 U.S. 277, 281–282, 76 S.Ct. 806, 809, 100 L.Ed. 1178 (1956).

The complaint is concerned with the *Schneider-Ramos* decision in three principal ways. In the first instance Plaintiffs Schneider and Ramos claim that they failed to receive a "full, fair and meaningful opportunity to be heard" in that case (see Complaint Section G, Paragraphs 47–48). Secondly, the Complaint challenges the remedy granted. (*Id.* Section H, Paragraphs 49–53). Lastly, it relies on the decision as a definitive interpretation by Puerto Rico's highest court for purposes of determining how Law No. 43 will be administered in the future by both the Puerto Rico Court and the Colegio.

■ To the extent that any part of the Schneider-Ramos complaint may be interpreted as challenging the retroactive outcome of the disciplinary proceedings against these parties before the Puerto Rico Court, such a challenge is foreclosed in a § 1983 action. *Tang v. Appellate Division of the New York Supreme Court,* 487 F.2d 138,

---

**26.** Compare this with Defendants' arguments to the effect that this is still an "ongoing" case. *Id.* at page 19.

**26A.** See also the "Judgment" entered by the Puerto Rico Court.

**1268**

143, 145–146 (C.A. 2, 1973), *cert. den.,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *MacKay v. Nesbett,* 412 F.2d 846 (C.A. 9, 1969), *cert. den.,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); *Jones v. Hulse,* 391 F.2d 198 (C.A. 8, 1968), *cert. den.,* 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968); *Gately v. Sutton,* 310 F.2d 107 (C.A. 10, 1962). Thus, that part of the present Schneider-Ramos suit which seeks the reinstatement of said Plaintiffs to the practice of law for failure to pay the Colegio dues found to be owed in the *Schneider-Ramos* case is DISMISSED for lack of jurisdiction.

As to the issues raised in the present case by the *prospective* application of the *Schneider-Ramos* doctrine to the *future* administration of Law No. 43, Plaintiffs Schneider and Ramos stand on different footing vis-a-vis the *Rooker* doctrine. As to *prospective* enforcement, the *Schneider-Ramos* decision only serves as a definitive interpretation of a state statute by the highest court of Puerto Rico. Thus, the consideration by this Court of the issues raised by the *prospective* enforcement of Law No. 43 cannot be interpreted as an appeal from a state court opinion, but is rather a new federal case in which the state court's interpretation serves to establish what is the substantive state law that is applicable. In this respect, Plaintiffs Schneider and Ramos stand in no different footing than brand new litigants, such as Plaintiffs Romany, Sous and Oreste Ramos, challenging the prospective validity of Law No. 43. See *Arrow v. Dow,* supra, 636 F.2d at 289.

Whether Plaintiffs Schneider and Ramos are barred from litigating such prospective issues by reason of the principles of res judicata and collateral estoppel are issues related to, but different from, the *Rooker*

question. We now will consider those other issues.[27]

## IV. RES JUDICATA AND COLLATERAL ESTOPPEL

 The Justices and the Colegio claim that the principles of res judicata and collateral estoppel prevent Plaintiffs from litigating the prospective Federal issues raised in the present cases.

Plaintiffs Romany,[28] Sous and Oreste Ramos contend that no such effect can be had against them because they were never parties to the litigation of the Schneider-Ramos issues on the merits. That suit, of course, was not a class action, whose results are binding on all members of the legal profession in Puerto Rico. *Hansberry v. Lee,* 311 U.S. 32, 41, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1941); *Amézquita v. Colón,* 518 F.2d 8, 11 (C.A. 1, 1975). The *Schneider-Ramos* decision can therefore have no preclusive effects upon Plaintiffs Romany, Sous and Oreste Ramos. *Sea-Land Services Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974); *General Foods Corp. v. Mass. Dept. of Health,* 648 F.2d 784, 787 (C.A. 1, 1981). The answer with regards to the other Plaintiffs is more illusive.

At issue is the credit to be given to the judgment entered by the Puerto Rico Court in *Schneider-Ramos,* in the light of 28 U.S.C. § 1738 which states, in its pertinent part:

"[The] . . . judicial proceedings [of any court of any State] . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State. . . . "

27. Plaintiffs Schneider-Ramos' claim that they failed to receive a fair hearing in *Schneider-Ramos* remains an issue relevant to that determination. See *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980).

28. As previously indicated, Plaintiff Romany did not litigate on the merits and thus stands on equal footing with Plaintiffs Sous and Oreste Ramos.

This statute in effect is the enactment, in the broad sense,[29] of the Federal res judicata rules. See generally, Wright & Miller, *Federal Practice and Procedure,* Vol. 18, Sec. 4469, at page 661. It requires the Federal courts to look to the state courts to see what effect will be given to the judgment by said courts. *Allen v. McCurry,* supra, 449 U.S. at 96, 101 S.Ct. at 415. In the case of Puerto Rico, we look to the Civil Code of Puerto Rico, 31 L.P.R.A. 1 et seq., as the Supreme Court of Puerto Rico has rejected the "use of common law precepts to resolve problems of civil law." *Valle v. American International Ins. Co.,* 79 JTS 50 (May 5, 1979) (our translation); see also *Lausell Marxuach v. Díaz de Yañez,* 103 D.P.R. 533, 535 (1975).

In its pertinent part, Article 1204 of the Civil Code (31 LPRA 3343) reads as follows:

"In order that the presumption of res judicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the *most perfect identity* between the things, causes, and persons of the litigants, and their capacity as such." (Emphasis supplied).

See *Lausell Marxuach v. Díaz de Yañez,* supra, *López Rivera v. Matos,* 101 D.P.R. 740 (1973).

In *Lausell Marxuach v. Díaz de Yañez,* supra, the Puerto Rico Court held that by "thing", Article 1204 means the object or matter over which the action is exercised. In that case a stipulation resulting in a judgment, in which a house was declared community property, was held to bar a later suit involving the same parties to the stipulation, in which one of them claimed that title to the house was not community property. The Puerto Rico Court also defined the meaning of "causes" within the meaning of Article 1204. Citing from the Spanish commentator Manresa ("Comentarios al Código Civil Español, To. VIII, Vol. 20, 6a. ed. 1967, pág. 301"), the opinion states that this term means:

". . . [T]he fundamental grounds, the origin of the actions or exceptions raised and decided, which should not be confused with the means of proof nor the legal grounds of the claims adduced by the parties . . ." (translation ours).

In *Millan v. Caribe Motors Corp.,* 83 P.R.R. 474, 487 (1961), it was said that:

". . . [T]he best test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions. If different evidence is required to sustain the different actions, then the causes of action are different and the former judgment is no bar to litigate the other causes of action."

In *Millán,* the purchaser of a truck refused to continue payments on the vehicle because he claimed it was defective. Caribe Motors sued for repossession and won by default. While that matter was still pending Millán sued for rescission of the contract and for damages. Caribe Motors alleged that the second suit was, in effect, a defense to the repossession which should have been alleged and litigated in that action. The Puerto Rico Court held that although "the better practice would have been to litigate everything within the repossession proceeding", no res judicata effects would be given to the first judgment because different causes of actions were involved. *Id.,* at 486. The decision went on to say:

". . . [B]ecause of the special and summary nature of [the repossession] proceeding . . . we can not inexorably require that other causes of action foreign to repossession be litigated therein . . ." (*Id.* 487–488).

The decision also held that (*Id.* 486):

"The doctrine of collateral estoppel by judgment does not apply either because, under that doctrine, the former judgment is conclusive only as to those matters which were actually raised and which were really or necessarily litigated and

---

**29.** Cf. *White v. World Finance of Meridian Inc.,* 653 F.2d 147, 150 n. 5 (C.A. 5, 1981).

adjudicated, but it is not conclusive as to those matters which, though involved in the case, were not litigated and adjudicated in the former action." [30]

 If we apply these tests to Plaintiffs Schneider-Ramos' present § 1983 action, we are at difficulty to conclude that a Puerto Rican court, independently viewing such action, would consider it to have "the most perfect identity" with the *Colegio v. Schneider* disbarment proceeding. Clearly, the evidence necessary to establish Schneider-Ramos' non-payment of dues is different from that required in the present suit, particularly as limited by the present opinion. Furthermore, the summary nature of a disbarment proceeding, especially as regards the apparently limited discovery of evidence, should bring into play the *Millán* exception.

 There are additional grounds for concluding that the *Colegio v. Schneider* decision does not bar the present action. Only a first judgment, on the merits of the same issue as in the second suit, bars the second action (*Mercado Riera v. Mercado Riera,* 100 P.R.R. 939 (1972)) and, as stated in *Millán,* collateral estoppel is applicable only if the issue has *actually* been litigated and determined. See also *Pereira v. Hernández,* 83 P.R.R. 156 (1961); *Capó Sánchez v. Secretary,* 92 P.R.R. 817 (1965).

In the *Colegio v. Schneider* proceedings, Plaintiffs Schneider and Ramos filed motions, purportedly in compliance with *England v. Louisiana Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), reserving for litigation in Federal Court their rights under the laws and Constitution of the United States, and asking the Puerto Rico Court to abstain from deciding these issues. (See Exhibits 5 and 6 of the Justice's Motion to Dismiss). To these the Puerto Rico Court responded that it "shall decide according to law" (see Resolution of July 13, 1978, Exhibit 7 of Justices' Motion to Dismiss). The Puerto Rico Court then went on, as we previously indicated, to decide the *Colegio* case solely on Puerto Rican grounds, studiously avoiding the federal issues. Leaving aside for the moment the issue of the validity of the *England* reservations, the Puerto Rico Court cannot on the one hand fail to decide *Colegio* on federal grounds and then turn around through the Justices and claim that the present action is barred because the Puerto Rico Court could have decided *Colegio* on Federal grounds. Someone is "play[ing] at cat and mouse" [31] with Plaintiffs Schneider and Ramos. Under those circumstances, this Court, as in *Howell v. State Bar of Texas,* 674 F.2d 1027, 1031 (C.A. 5, 1982), must exercise jurisdiction over Plaintiffs Schneider-Ramos' federal claims.

The decisions of the Puerto Rico Court have refused to apply res judicata when it would tend to defeat the ends of justice. *Pérez v. Bauzá,* 83 P.R.R. 213 (1961); *Suárez Fuentes v. Superior Court,* 88 P.R.R. 133 (1963). The barring of the present action as limited by this decision would, under the circumstances of this case, be a gross miscarriage of justice. The matters here at issue do not concern "purely private relations devoid of public interest considerations"; thus a Puerto Rican Court would find departure from res judicata warranted. See *Rodríguez v. Baldrich,* 508 F.Supp. 614, 619 (D.C.P.R., 1981).

It may not be coincidental that the briefs in support of the Motions to Dismiss, on this point are almost totally devoid of Puerto Rican citations. Interestingly enough these rely almost exclusively on Federal law. However, their contentions fare no better under that law.

The Justices and the Colegio rely on *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411,

---

**30.** Interestingly enough, the Puerto Rico Court here cites the Freeman's "Law of Judgments" and other common law sources as the basis for its holding.

**31.** See *In Re Berkan,* 648 F.2d 1386, 1390 (C.A. 1, 1981).

66 L.Ed.2d 308 (1980), as the principal basis for alleging that Plaintiffs Schneider and Ramos' present action is barred by res judicata-collateral estoppel principles. In that case, McCurry was tried and convicted in state court notwithstanding the suppression of some evidence seized when the police entered his house after a shootout. The state court held that evidence seized in plain view was admissible. McCurry then brought a § 1983 action in Federal Court, the gist of which was the alleged unconstitutional search and seizure. He made no claim that the state courts had denied him a "full and fair opportunity" to litigate the search and seizure claim. The Federal court dismissed the federal action pursuant to the principles of collateral estoppel. The Court of Appeals, reversed, and, in turn, it was reversed by the Supreme Court. The Court stated (at 449 U.S. at 94, 101 S.Ct. at 414):

> "The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case ..." (citations omitted).

■ In its broadest sense, the term "res judicata" refers to the distinctive effects of a judgment, separately characterized as "claim preclusion" and "issue preclusion." The first, forecloses any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit. *Lovely v. Laliberte,* 498 F.2d 1261 (C.A. 1, 1974). The second, has the effect of foreclosing relitigation of matters that have once been litigated and decided.

> "... '[C]laim preclusion', or true res judicata ... treats a judgment, once ren-

dered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action' ... Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial... The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.

> "The second doctrine, collateral estoppel or 'issue preclusion', recognizes that suits addressed to particular claims may present issues relevant to suits on other claims ... [I]ssue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment in a prior litigation between the same parties ... [T]he contested issue must have been litigated and necessary to the judgment earlier rendered." *Kaspar Wire Works Inc. v. Leco Eng. & Mach. Inc.,* 575 F.2d 530, 535–536 (C.A. 5, 1978).

The burden of establishing preclusion is placed on the party claiming it. *Oldham v. Pritchett,* 599 F.2d 274, 277 (C.A. 8, 1979); *Peters v. Missouri-Pacific R. R.,* 483 F.2d 490, 500 (C.A. 5, 1973), cert. den., 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973); *United States v. Davis,* 460 F.2d 792, 796 (C.A. 4, 1972); *Hayles v. Randall Motor Co.,* 455 F.2d 169, 173 (C.A. 10, 1972) and reasonable doubts will be resolved against an asserted preclusion. *Harris v. Jacobs,* 621 F.2d 341, 343 (C.A. 9, 1980); *McNellis v. First Fed. Sav. & Loan,* 364 F.2d 251, 257 n. 8, (C.A. 2, 1966), cert. den., 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966); *Northern Oil Co. v. Socony Mobil Oil Co.,* 368 F.2d 384, 388 (C.A. 2, 1966).

■ A judgment must possess certain characteristics to qualify for claim preclusion: (1) it must have been rendered by a court of competent jurisdiction, (2) it must be a final judgment on the merits, and (3)

there must be an absence of fraud or some other factor invalidating the judgment. See Wright & Miller, supra, Sec. 4406 at p. 46. Claim preclusion operates only against the parties to the first suit or those in privity with them.

■ Where the object of the first proceeding is to establish the legality of continuing conduct into the future, a second action is precluded by the first judgment. *Carr v. United States,* 507 F.2d 191 (C.A. 5, 1975), *cert. den.,* 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975). Where the first action concerns only a litigation of past legal conduct however, a new claim or cause of action is created as the conduct continues, and the new claim is not precluded. *Blair v. City of Greenville,* 649 F.2d 365, 368 (C.A. 5, 1981); *United States v. American T. & T.,* 524 F.Supp. 1336 (D.C. D.C., 1981); *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327–329, 75 S.Ct. 865, 868–869, 99 L.Ed. 1122 (1955); *International Harvester Co. v. OSHA,* 628 F.2d 982, 985–986 (C.A. 7, 1980); *Kilgoar v. Colbert County Bd. of Ed.,* 578 F.2d 1033, 1035 (C.A. 5, 1978); *Crowe v. Leeke,* 550 F.2d 184, 187 (C.A. 4, 1977); *Dawkins v. Nabisco, Inc.,* 549 F.2d 396, 397 (C.A. 5, 1977), *cert. den.,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Cf. *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *United States v. Rexach,* 482 F.2d 10, 19 (C.A. 1, 1973), *cert. den.,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). Thus claim preclusions cannot apply in settings of continuing conduct.

■ Furthermore, apart from compulsory counterclaim rules, the traditional conclusion has been that purely defensive use of a theory does not preclude a later action for affirmative recovery on the same theory. Cf. *Virginia-Carolina Chem. Co. v. Kirven,* 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179 (1909); see Wright and Miller, supra, at § 4414, at pages 116–117.

Issue preclusion is, simply put, a principle that later courts should honor the first deci-

sion of a matter that has been actually litigated.

"... [a] right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *Southern Pacific R. R. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

■ The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided. *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Mere prior litigation of an issue without a decision does not justify preclusion when the same issue arises under a different claim or cause of action. The burden is on the party asserting preclusion to show actual decision of the specific issues involved. *Spilman v. Harley,* 656 F.2d 224, 229 (C.A. 6, 1981); *Hernández v. City of Los Angeles,* 624 F.2d 935, 937 (C.A. 9, 1980); *Glass v. U. S. Rubber Co.,* 382 F.2d 378, 384 (C.A. 10, 1967).

Preclusion cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case. *Allen v. McCurry,* supra, 449 U.S. at 90, 101 S.Ct. at 411; *Kremer v. Chemical Construction Co.,* —— U.S. ——, —— ——, 102 S.Ct. 1883, 1897 (1982). Thus it is a bar only "in cases where the state courts have recognized the constitutional claims asserted and provided fair procedures for determining them." *Allen v. McCurry,* supra, 449 U.S. at 99, 101 S.Ct. at 417. The Court continues:

"... [T]he federal courts could step in where the state courts were unable or unwilling to protect federal rights ... This understanding of s1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exist: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." (*Id.* at 101, 101 S.Ct. at 418).

■ The above thus stand for the proposition that neither claim nor issue preclusion is warranted if:

(1) the state court "has [not] shown itself willing and able to protect federal rights." *Id.* at 104, 101 S.Ct. at 420, and

(2) if the parties have not been given a full and fair opportunity to litigate the federal claims, *Id.*

■ It is clear, as previously pointed out in this opinion, that the Puerto Rico Court avoided deciding *Colegio v. Schneider,* supra, on federal grounds. The circumstances of this case lead us to the conclusion that said Court was unwilling to protect Schneider-Ramos' *federal* rights.[32] Furthermore, the Federal constitutional issues were not only not decided, but were neither briefed nor argued. This can hardly amount to a "meaningful" hearing of the *federal* issues. See *Bickham v. Lashof,* 620 F.2d 1238, 1246 (C.A. 7, 1980). Nor was discovery of any substance in fact allowed. See *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331 n. 15, 99 S.Ct. 645, 651 n. 15, 58 L.Ed.2d 552 (1979).

*Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) is relevant to the present setting. The facts of that case and its procedural history are of some importance.

New Hampshire requires all noncommercial vehicles to bear license plates embossed with the state motto, "Live Free or Die", and make it a misdemeanor to obscure the motto. Maynard covered up the motto on his license plates alleging that dissemination of that message, by reason of his being forced to display it in his car, violated his religious and political beliefs. At the first of three trials, Maynard explained his religious objections to the trial court. Nevertheless he was found guilty on all three separate charges and upon refusing to pay the fines imposed was sentenced to, and served, 15 days in jail. No appeal was taken from any of the sentences. Instead, Maynard filed an action in Federal District Court pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief against enforcement of the New Hampshire statutes *in the future.*

The state claimed before the three judge district court that Maynard was barred by his failure to appeal any of his three state convictions. The opinion of the Court (Coffin, C. J.) indicated that plaintiffs were not collaterally attacking the state court convictions but rather seeking purely prospective relief. 406 F.Supp. 1381, 1385. The Court stated that (*Id.* n. 6):

"A more plausible position for defendants to take would be that Mr. Maynard's state convictions bar litigation of the federal constitutional issues. Although more plausible, this argument too fails. The first circuit has held that a state criminal conviction will have a preclusion effect in a federal civil rights action only with respect to matters actually litigated and decided at the state criminal trial ... Since the constitutionality of the state

---

**32.** Cf. *Pan American Computer Corp. v. Data General Corp.,* No. 79–184, decided by the Supreme Court of Puerto Rico on May 14, 1981.

statutes was not litigated by Mr. Maynard in the state misdemeanor proceedings, collateral estoppel principles do not preclude this court from considering this issue." (citations omitted).

The Supreme Court, in substance confirms the procedural aspects of the decision below. See 430 U.S. at 710–711, 97 S.Ct. at 1432–1433.

In upholding the ruling granting an order prohibiting New Hampshire from the *future* prosecution of Maynard for conduct similar to that which led to his three convictions, the Supreme Court states (430 U.S. at 714, 97 S.Ct. at 1435):

> "We begin with the proposition that the right of freedom of thoughts protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all ... A system which secures the right to proselytize religious, political and ideological causes must also guarantee the concomitant right to decline to foster such concepts. The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'"

This case has more than passing relevance to both the procedural and substantive issues raised by the present dispute.

In summary, we hold that the failure to grant Plaintiffs Schneider and Ramos a full and fair opportunity to litigate the *prospective* federal issues raised herein in the *Colegio v. Schneider* case before the Puerto Rico Court, as well as the unwillingness of that Court to consider and decide those issues, dispense with our having to grant either res judicata or collateral estoppel effect to the litigation in this Court of those prospective issues.

It is thus unnecessary for us to decide the legal consequences of the so-called *England* reservations, as such. But cf. *Lovely v. Laliberte,* supra, 498 F.2d at 1263–1264.

---

**V. YOUNGER v. HARRIS** [33]

 The Justices and the Colegio contend that the Puerto Rican Court's retention of jurisdiction for purposes of supervising the *Abood*-like remedy provided in *Colegio v. Schneider* makes that case an ongoing judicial proceeding, which deprives this Court of jurisdiction to consider injunctive and declaratory relief. In addition to *Younger v. Harris,* and other cases cited in its brief, reliance is also placed on *Middlesex County Ethics Committee v. Garden State Bar Association,* —— U.S. ——, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

To begin with, this contention flies in the face of the Puerto Rico Court's own rulings in the *Colegio v. Schneider* case, to say nothing of the conflicting positions taken by the Justices in the Motion to Dismiss.[34] In its "Resolution" of June 3, 1982, wherein Schneider-Ramos were separated from the practice of law and notarial practice until they paid the sums owed the Colegio, the Puerto Rico Court unequivocally stated that "[t]he judgment of this Court is now final and unappealable" (See Exhibit 12 of Motion to Dismiss). Can it be seriously alleged now that such is not the case?

Schneider-Ramos' rights as to the past dues have been finally adjudicated. Those rights, however, are not before this Court. *All* Plaintiffs seek only to prevent *prospective* enforcement of Law No. 43, as interpreted by the Puerto Rico Court. There is no ongoing state *disbarment* proceeding involving that issue. It is such an ongoing action that was barred by *Middlesex,* to allow the state to interpret its rules in the face of a constitutional challenge. The Puerto Rico Court has interpreted the law on Puerto Rican constitutional grounds. All that remains to be decided is whether the law can be enforced against all Plaintiffs in the *future,* in the face of a *federal* constitutional issue never decided by any court. Such a challenge is permissible un-

---

**33.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 639 (1971).

**34.** Ex., allegation of res judicata, which requires a final judgment.

der *Wooley v. Maynard,* supra, 430 U.S. at 710–711, 97 S.Ct. at 1432–1433, among others.

There is no ongoing state disciplinary proceeding within the meaning of *Younger* or *Middlesex.*

## V. ALLEGATIONS CONCERNING THE BUTLER ACT

[24] The Butler Act, 48 U.S.C. § 872 provides, in part, that:

"No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

Plaintiffs seek equitable relief against the Secretary of Justice and the Secretary of the Treasury to prevent them "from . . . us[ing] . . . public services, funds and property to sell forensic and notarial stamps and enforce the sale of said stamps for the benefit of the Colegio. (See Paragraph 2(c) of the prayer in the Complaint.) Plaintiffs also seek relief from payment of mandatory Colegio dues. All of these allegations are based on their claims to the effect that they are being forced, by these payments, to support ideological activities which are contrary to their beliefs.

The Secretaries claim that as applied to the notarial stamps and the forensic stamps, which they allege are taxes, these requests for relief amount to a restraint on the collection of taxes, all of which violates the provisions of the Butler Act. The Justices and the Colegio join this contention, but include also an allegation to the effect that the Colegio dues are also a tax within the Butler Act!

Our starting, and finishing, point is a determination of whether the collections in question are "taxes" within the meaning of the Butler Act. It should be noted that the Butler Act has been held to be the substantive equivalent of the Tax Injunction Act. 28 U.S.C. § 1341. *United States Brewers Assoc. Inc. v. César Pérez,* 455 F.Supp. 1159 (D.C.P.R.1978), *rem.* on other grounds, 592 F.2d 1212 (C.A. 1, 1978), *cert. den.,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 43 (1979).

It has been held that a determination of what is a "tax" under the Tax Injunction Act "should be [done] as a matter of federal law by reference to congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels developed in entirely different legal contexts." *Robinson Protective, etc. v. City of Philadelphia,* 581 F.2d 371, 374 (C.A. 3, 1978). Two purposes are identified in that case as the reasons behind that statute: first, to deprive out-of-state corporations of an advantage over state taxpayers in being able to threaten localities with protracted litigation in federal courts, which induces the localities to compromise their tax claims; and second, to avoid federal judicial interference with state revenue raising operations and administration of their tax codes. *Id.* 581 F.2d at 375–376.

Neither of these purposes are called into play by the collections in question. Obviously only local entities are involved in the present dispute. Furthermore, no *state* revenue is at issue, as all funds collected go either directly, or by transmission, to the Colegio. The local government does not even charge the Colegio for its administrative expenses in the sale of stamps and collection of moneys.

There is no violation of the Butler Act by these actions.

## VI. CONCLUSION

1. The non-conspiracy allegations of Plaintiffs, as regards the future enforcement of Law No. 43 and related laws, state a cause of action upon which relief may be granted pursuant to 42 U.S.C. § 1983;

2. The conspiracy allegations against the Justices and Colegio are hereby dismissed for failure to state a claim pursuant to 42 U.S.C. § 1983;

3. The claim for damages against the Justices and the claim for damages against

Colegio, as applied only to the latter's prosecutorial activities in *Colegio v. Schneider,* supra, are dismissed for failure to state a claim pursuant to 42 U.S.C. § 1983. Damage claims against Colegio for use of funds *prior* to the *Colegio v. Schneider,* supra, judgment are also dismissed;

4. All allegations or claims seeking in any way to modify, alter, challenge or otherwise affect the outcome of the suspension for non-payment of past dues of Plaintiffs Schneider and Ramos in *Colegio v. Schneider,* supra, are dismissed for lack of jurisdiction; and

5. All other allegations in Defendants' various Motions to Dismiss and/or Summary Judgment are denied.

IT IS SO ORDERED.