**David P. ARROW, et al., Plaintiffs,**

v.

**James L. DOW, et al., Defendants.**

**No. 78–434–M Civil.**

United States District Court,
D. New Mexico.

July 16, 1982.
As Amended Aug. 16, 1982.

Robert R. Rothstein, Richard J. Rubin, Santa Fe, N. M., for plaintiffs.

Modrall, Sperling, Roehl, Harris & Sisk, Kenneth L. Harrigan, Rodey, Dickason, Sloan, Akin & Robb, Bruce D. Hall, Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, District Judge.

This matter arises for consideration on cross motions for summary judgment. Defendants are the New Mexico Board of Bar Commissioners, members of the Board and officers of the New Mexico Bar (the Bar). Plaintiffs are members of the Bar who claim that the Bar is depriving them of freedom of speech and association by the use of mandatory Bar dues to lobby for or against legislation in the New Mexico Legislature. Plaintiffs seek restitution of Bar dues spent for lobbying efforts and injunctive relief. Jurisdiction is proper under 28 U.S.C. § 1343(3) (1976). The following shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

By Rule of the New Mexico Supreme Court, membership in the Bar is required in order to practice law in New Mexico. Bar dues are charged. Non-payment of Bar Dues results in loss of right to practice. The control of the dues remains with the Bar, subject to the supervision of the New Mexico Supreme Court. Since 1977 portions of the fees collected have been used to pay the salaries of lobbyists employed to lobby for or against issues which the Bar, by its president, finds to be germane to the purposes for which the Bar was formed. The parties have stipulated that the Bar Commissioners and officers are acting within the scope of their authority under state law.

Plaintiffs claim, however, that the use of mandatory bar fees to support causes in the New Mexico Legislature which they oppose, deprive them of the freedom to believe as they choose in violation of the First and Fourteenth Amendments of the United States Constitution. Defendants maintain that use of Bar fees to lobby on legislation does not deprive plaintiffs of any First

Amendment rights or, alternatively, any deprivation of plaintiffs' First Amendment rights is outweighed by the important governmental interests of preserving the Bar and informing the legislature and public of the views of a majority of New Mexico lawyers on pending legislation. A list of the issues on which the Bar has spent funds to lobby about is attached as an appendix.

The Supreme Court has considered whether compulsory membership in a labor organization and bar association and compelled financial support of the organizations, as a condition to employment or practice, violates the members' right to freedom of association. In *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) and *Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1960) the Court held that mandatory union dues used to finance collective bargaining activities in a union shop (mandatory membership) did not violate plaintiffs' rights under the First Amendment. In *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1960) (plurality opinion), the Court decided, relying on its decisions in *Street* and *Hanson*, that compelled membership in a state bar and exaction of compulsory dues to finance the bar did not deprive plaintiffs of their rights to freedom of association. However, the Court declined in *Lathrop*, on the basis of an inadequate record, to decide whether the use of bar fees to support legislation to which the plaintiffs were "ideologically opposed" deprived plaintiffs of the rights to free speech. The identical issue, in the context of a labor union, was again presented in *Abood v. Detroit Board of Ed.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1976).

In *Abood*, plaintiffs claimed that portions of a mandatory employment service charge levied upon non-union members (equal to union membership fees) were being used to support ideological and political causes which plaintiffs did not wish to support.[1] The Court in *Abood* drew a distinction between funds spent for "collective bargaining activities" and funds spent to lobby on "ideological activities unrelated to collective bargaining activities." The Court held that funds spent for the latter purpose were an impermissible intrusion on plaintiffs' First Amendment rights while funds spent for collective bargaining activity, although an intrusion on plaintiffs' First Amendment rights, were nonetheless justified by the important governmental interest of industrial peace. The Court elaborated on its analysis in *Hanson* and *Street* stating that in those cases, as with *Abood*, important governmental interests justified the impingement upon associational freedom created by the union shop.

Defendants maintain that *Abood* is not authority for the analysis to be employed in this case because *Abood* involved a labor union whereas an integrated bar is presently under consideration. Plaintiffs maintain that *Abood* controls the analysis and that the remaining question is whether the lobbying activities of the Bar were legitimate Bar concerns for which important governmental interests justify impingement upon plaintiffs' First Amendment rights, or whether the lobbying efforts were directed at political issues unrelated to legitimate bar concerns. Defendants offer no substantial justification for distinguishing between a bar association and a labor union for purposes of First Amendment analysis and I find that *Abood* provides the analysis for the decision in this case.

The First Amendment does not distinguish between lawyers and other occupations. Unless there is an important governmental interest requiring otherwise, lawyers are entitled to the same protections

---

**1.** Although plaintiffs' claims in *Abood* were general and not specific, as were the claims in *Lathrop* which the Court refused to hear, the Supreme Court held in *Abood* that plaintiffs' complaint stated a cause of action. The Court reasoned that to require a more specific statement of the legislation which plaintiffs opposed "would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure." (footnote omitted). *Abood v. Detroit Board of Ed.*, at 241, 97 S.Ct. at 1802.

from the compelled support of ideas that are afforded labor union members. As stated by the Supreme Court in *Abood,*

> The fact that appellants are compelled to make, rather than prohibited from making, contributions for political purposes works no less an infringement on their constitutional right. (footnote omitted).

> At the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society, one's belief should be shaped by his mind and his conscience rather than coerced by the state. (citation omitted) And the freedom of belief is no incidental or secondary aspect of the First Amendment's protections: 'if there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.' (citation omitted)

431 U.S. at 235, 97 S.Ct. at 1799.

Furthermore, the Court in *Abood* noted that the issue under consideration was identical to that which was avoided in *Lathrop.* The Court stated that the issue was not reached in *Lathrop* and that, therefore, *Lathrop* could not provide authority for the decision in *Abood.* Because the Supreme Court saw the issues in *Lathrop* and *Abood* as identical, *Abood* provides the analysis for determining whether or not plaintiffs' right to believe as they choose have been violated. The remaining inquiry is, therefore, whether the reasons advanced by the Bar to justify use of plaintiffs' dues to finance the lobbying activities at issue are important governmental interests as contemplated by the Court in *Abood.*

In *Abood,* the Supreme Court described the important governmental interests served by collective bargaining as the interest which brought the group together, specifically, collective bargaining activities as opposed to ideological activities unrelated to collective bargaining. Plaintiffs rely on the statement of justification in *Lathrop* for the infringement on the rights of freedom of association caused by compelled membership in a state bar and compelled support of bar activities, to delineate what are important governmental interests and what are not important governmental interests in the context of a bar association. The Supreme Court stated the Wisconsin Supreme Court could have reasonably believed that an integrated bar would serve the purposes of "elevating the educational and ethical standards of the bar to the end of improving the quality of the legal services available to the people of the state, without any reference to the political process." *Lathrop v. Donohue,* 367 U.S. at 843, 81 S.Ct. at 1838. Plaintiffs maintain, therefore, that lobbying efforts directed at any cause other than elevating the ethical or educational standards of the Bar to the end of improving the quality of legal services available, are impermissible.

Defendants maintain that there are important governmental interests served by the Bar's lobbying efforts other than those that plaintiffs concede. Defendants state the legitimate purposes of the Bar are as broad as are necessary to encompass any reasonable activity by the Bar which may reasonably be expected to promote the administration of justice or improvement of the legal system. In support of this standard, the Bar argues that the position of lawyers in society requires that they be free to use the plaintiffs' dues to make the position of a majority of the lawyers known to the legislature and the public. The Bar relies on cases which hold that the kinds of lobbying activities at issue are authorized by the State Supreme Court Orders creating the integrated bar. The position argued by the defendants is summarized in a statement from the Supreme Court of Florida in the case of *In Re Florida Bar Board of Governors' Action,* 217 So.2d 323 (Fla. 1969), as follows:

> Lawyers, as members of an ancient and honorable profession, have a duty to utilize their training and experience in rendering service to the public. . . .

> Since the inception of the Florida Bar, the Board of Governors has faced up to

its professional responsibility of acting in the spirit of public service and has prepared and advocated adoption by the State Legislature of numerous enactments, .... It has consistently advocated in the legislature various improvements in the judicial system. Some of these matters were directly related to the administration of justice, and others were "political" in nature, using the word "political" in its broad sense as pertaining to the organization or administration of government ....

The true test (of whether or not the bar should engage in particular political activity) is whether the matter is of great public importance, and whether lawyers, because of their training and experience, are especially fitted to evaluate the same. If a matter vitally affects the public and lawyers are peculiarly fitted to evaluate it, it is not only the right but the duty of the bar as a professional organization to make such evaluation and advise the public of its conclusions.

At 324–25.

■ The remaining issue is: Are society's interests in the State Legislature being informed of the views of the majority of lawyers on issues which may reasonably be expected to promote the administration of justice or improvement of the legal system important governmental interests which justify the infringement upon plaintiffs' rights occasioned by the use of Bar dues to finance lobbying efforts?

I conclude the lobbying efforts of the New Mexico Bar do not serve important governmental interests as contemplated by the Court in *Abood*. The standard urged by the Bar is an all-encompassing exception to the rule of *Abood*. It is difficult to conceive of an issue presented to the New Mexico Legislature which cannot arguably be related to the administration of justice or improvement of the legal system. The standard is too broad. I cannot conclude that advancing the administration of justice

or improving the legal system are equivalent in the context of a Bar Association, to collective bargaining activities in the context of a labor union.

As has been noted, the Supreme Court in *Lathrop* stated that the important governmental interests which justified the infringement upon individual lawyers' First Amendment rights occasioned by compelled membership in and financial support to a bar association are "improving the ethical and educational standards of lawyers without reference to the political process." *Lathrop v. Donohue*, 367 U.S. at 843, 81 S.Ct. at 1838. Similarly, seven Justices of the Michigan Supreme Court in *Falk v. State Bar of Michigan*, 411 Mich. 63, 305 N.W.2d 201 (1981) would conclude that all lobbying activities engaged in by the Michigan Bar impermissibly infringe on plaintiffs' First Amendment rights.[2] The Justices stated,

The ultimate objective of these political and legislative activities is to influence public decision making. Even if the specific legislative political goals can be justified as advancing the public interest or improving the administration of justice, compelled support and association to further these activities is not constitutionally acceptable. The 'public interests' and the 'advancement of jurisprudence' are not unitary concepts subject to a single interpretation. Disagreements regarding legislative or other policy choices arise not only because they result in differing practical affects on individuals, but more importantly because they reflect differing ideological approaches to the subject matter. Such ideological beliefs, and association to promote or oppose such beliefs lie at 'the core of those activities protected by the First Amendment.' *Elrod v. Burns*, 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) (plurality opinion).

*Falk v. State Bar of Michigan*, at 217–218.

The Justices in *Falk* would find as permissible compulsory fees spent for: (a) reg-

---

**2.** A majority of the Michigan Supreme Court in *Falk* concluded that the case must be remanded to the Special Master for additional fact find-

ings. The Master's Report has now been filed and the Court is presently considering it.

ulatory activity; (b) continuing legal education; (c) publication of the Michigan Bar Journal; (d) preservation of the client security fund; (e) activities designed to educate the general public concerning the use of legal system and the relationship between individuals and the legal system generally; (f) activities designed to make the legal system more accessible.

I find the standard referred to in *Lathrop* and the discussion in *Falk* persuasive. Although I decline to hold categorically that the Bar is prohibited from spending bar dues for lobbying, I do conclude that the lobbying efforts presently under consideration were not directed to important governmental interests which would justify the infringement upon plaintiffs' rights caused by using Bar dues to finance lobbying efforts.

I do not hold that the Bar is not free to express its views with funds other than Bar dues necessary for membership in the Bar. Nor is this decision intended to preclude the use of Bar funds for research on issues the Bar deems important or for dissemination of the Bar's views on those issues in any manner other than lobbying. Plaintiffs complain only of the Bar's lobbying efforts and the holding in this case is limited to that claim.

In summary, I conclude that the Bar may exact dues to support only those duties and functions of the Bar which serve important or compelling governmental interests. I do not attempt to delineate all functions and duties of the Bar which do serve important governmental interests, I do conclude that lobbying efforts at issue in this case did not serve such important governmental interests.

### APPENDIX

The issues for which the Bar has spent funds to lobby are as follows:

1. Opposed a bill that would have required mandatory continuing legal education as a condition for renewal of licenses for practicing attorneys.

2. Supported a bill repealing provisions of New Mexico law which had provided that the Board of Bar Examiners and the Board of Bar Commissioners were state agencies for certain purposes.

3. Opposed a bill providing for two classes of lawyer licenses.

4. Opposed a resolution to amend Article 6, Section 1 of the New Mexico Constitution limiting the New Mexico Supreme Court to procedural rule making power.

5. Supported a bill allowing notaries public to use a stamp or a seal and specifying the language of the seal.

6. Supported a bill clarifying that the Rules of Criminal Procedure applied to magistrate and municipal courts where the Supreme Court rule-making power may not apply.

7. Supported a bill modifying the judicial retirement system by extending the vesting period from ten to fifteen years and reducing the individual Judge's percentage contribution to the fund.

8. Supported a bill increasing the District Court Civil Filing Fee to $40.00.

9. Supported bills increasing judicial salaries of District Court and Court of Appeals Judges, and Supreme Court Justices.

10. Supported a bill upgrading the salaries of District Court and Magistrate Court Clerks.

11. Supported a bill increasing the salaries of all magistrates.

12. Supported a bill increasing the hourly rates for contract · attorneys with the New Mexico Public Defender's Office.

13. Supported a bill appropriating $2,500,000.00 for allocation to the Public Defender's Department, the District Attorney for the First Judicial District and the Attorney General for expenses generated by the prosecution and defense of the criminal cases arising out of the New Mexico State Penitentiary riot of February, 1980.

14. Supported the Uniform Child Custody Jurisdiction Act which defined when jurisdiction was properly laid for the purposes of rendering or modifying a child custody decree.

15. Supported a bill modifying the New Mexico Mental Health Code.

16. The Bar lobbyed against a bill that would have placed the Bar Association's

budget under the auspices of the New Mexico Department of Finance and Administration.

IT IS FURTHER ORDERED that plaintiffs' claim for damages will be considered at a hearing. Defendants' claims of good faith immunity will be considered at that time.