Thomas L. POPEJOY, Jr., Mickey D. Barnett, James A. Branch, Jr., James A. Burke, Joel B. Burnstein, Michael K. Daniels, Mark H. Donatelli, Steven G. Farber, Vicki L. Gabin, Helen L. Lopez, Kerry J. Morris, Gary D. Ottinger, Ellen

Pinnes, Linda L. Rigsby, Joseph A. Roberts, William E. Snead, Harold D. Stratton, Jr., Michael Eugene Vigil, and Judith C. Wallner, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NEW MEXICO BOARD OF BAR COMMISSIONERS, Linda L. McDonald, and State Bar of New Mexico, a non-profit corporation, Defendants.

Civ. No. 92–1462JB.

United States District Court,
D. New Mexico.

Aug. 26, 1993.

Richard J. Rubin, Santa Fe, NM and William G. Walker, Albuquerque, NM, for plaintiffs.

William S. Dixon, Andrew G. Schultz, Charles Kipp Purcell, and Michael B. Browde, Albuquerque, NM, for defendants.

1. Samuel Adams, Speech, Philadelphia (August

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

*Driven from every other corner of the earth, freedom of thought and the right of private judgment in matters of conscience direct their course to this ... country as their last asylum.*[1]

It is ironic that attorneys, relentlessly disparaged by the public, are now depreciated by their own, who claim attorneys are not entitled to the same guarantees of freedom the First Amendment extends to nonlawyers in matters involving nonvoluntary associations. *See Abood v. Detroit Board of Education,* 431 U.S. 209, 233, 97 S.Ct. 1782, 1798, 52 L.Ed.2d 261 (1977). The essence of the matter before the Court is whether attorneys are entitled to the same procedural protections as are nonunion members who are required to contribute to the cost of collective-bargaining activities. The unwavering undercurrent, however, carries Plaintiffs' concern that Bar members are being compelled to subsidize political or ideological activity disguised as being germane to the purpose of regulating the legal profession or improving the quality of legal services. *See Keller v. State Bar of California,* 496 U.S. 1, 14, 110 S.Ct. 2228, 2236, 110 L.Ed.2d 1 (1990). A ruling in favor of the Defendants on the procedural issues would substantially inhibit Plaintiffs' ability to challenge the germaneness of the expenditures and activities their dues support. *See Chicago Teachers Union v. Hudson,* 475 U.S. 292, 303 n. 12, 106 S.Ct. 1066, 1074 n. 12, 89 L.Ed.2d 232 (1986) (quoting Monaghan, *First Amendment "Due Process,"* 83 Harv.L.Rev. 518, 551 (1970) ("The first amendment due process cases have shown that first amendment rights are fragile and can be destroyed by insensitive procedures")). If lawyers, the vindicators of justice, *see Matter of Doe,* 801 F.Supp. 478, 479 (D.N.M.1992), cannot protect their own "right of private judgment," surely they cannot preserve their commitment to advocate for the First Amendment rights of others. Therefore, as "procedural safeguards often have a special bite in the First Amendment

1, 1776).

context," *Hudson*, 475 U.S. at 303, n. 12, 106 S.Ct. at 1074, n. 12 (quoting Gunther, *Cases and Materials on Constitutional Law* 1373 (10th ed. 1980)), the Court has carefully scrutinized Defendants' procedures.

Accordingly, when this matter came before the Court on July 27, 1993, for oral argument, the Court granted judgment on the merits to Plaintiffs and dismissed individual Defendant Linda McDonald. The Court's decisions at the hearing were summarily given; this memorandum opinion and order explains the Court's rationale and sets the stage for specific injunctive relief.

### FACTS [2]

Plaintiffs, attorneys licensed to practice in the State of New Mexico, are members of the State Bar. The State Bar is an integrated bar—an association of attorneys in which membership and dues are required as a condition of engaging in their profession in the State of New Mexico.

The issue before the Court is whether Defendants' disclosure of expenses in past years (specifically, for 1991, 1992, and 1993) and for future proposed budgets and its objection procedures are constitutional. The budgets for 1991, 1992, and 1993 were published in the New Mexico Bar Bulletin in the fall preceding the applicable year. The budgets were not verified by an independent auditor as of the date they were approved by the New Mexico Supreme Court or the date they were mailed to the Bar membership. The Bar Bulletins in question were mailed on October 11, 1990; September 26, 1991; and October 1, 1993, respectively, and were received by the Bar membership by delivery through the normal course of the United States mail.

The Bar's annual reports were audited by an independent auditor. The annual reports for 1989, 1990, and 1991 were published in the Bar Bulletin on August 9, 1990; July 11, 1991; and April 30, 1992, respectively, and

were mailed to the members of the Bar on the respective dates of their publication.

The procedures for State Bar budget approval are as follows and include the applicable 1992 dates: [3]

1. On September 23, 1992, the Finance Committee of the Board presented the proposed 1993 budget to the Board of Bar Commissioners, who initially approved it.

2. Defendants published the proposed budget in the State Bar Bulletin and mailed the Bulletin to the membership on October 1, 1992.

3. The membership of the State Bar was notified in this publication that each member had the right to object to any expenditure in the budget on the grounds it is ideological in nature or nongermane to the legitimate purposes of the Bar, and that they had until October 15, 1992, to submit written objections to or comments on any item(s) in the proposed budget.

4. In the event there were objections or comments, the Executive Committee [4] would have reviewed the written objections or comments and reported its recommendations concerning such to the Board of Bar Commissioners.

5. The Board of Bar Commissioners would then have entertained oral comments on the previously submitted written comments or objections at a public meeting scheduled for approval of the budget.

6. Written objections not accepted by the Board would have been submitted to the New Mexico Supreme Court with the Board's required submission of the budget to the Court.

7. The Supreme Court gives any State Bar member appearing before the Board an opportunity to be heard by the Court "on any matter not resolved by the commissioners."

8. The Supreme Court approved the budget on October 21, 1992.

---

2. The parties stipulated to the relevant facts.

3. The procedures are promulgated in the State Bar of New Mexico Bylaws art. VI, § 6.3. *See also* SCRA 1986, 24–104(C) (1992).

4. The Executive Committee consists of the officers of the State Bar, who also serve as the officers of Board of Bar Commissioners.

9. Defendants mailed dues notices to the membership on December 19, 1992.

## MOTION TO DISMISS DEFENDANT LINDA McDONALD

Individual Defendant Linda McDonald moves to dismiss for failure to state a claim against her. She argues the only assertion in the complaint against her is that she is executive director of the State Bar and the complaint contains no specific allegations against her. She contends she has no final responsibility for either the mechanism by which the State Bar's budget is approved or the procedure for setting the amount of the annual license fee payable by all State Bar members; that the mere fact she may have indirectly participated in the alleged deprivation of Plaintiffs' constitutional rights by helping to formulate the Bar's procedures is insufficient to defeat a motion to dismiss.

Plaintiffs claim it is appropriate to name McDonald because she is clothed with the duty of enforcing the procedures for collecting the Bar members' dues. Therefore, her presence is required to ensure effective and adequate injunctive relief.

For the purposes of a motion to dismiss, the material allegations of the complaint must be accepted as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). The complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court shall construe the pleadings liberally and, if there is any possibility of relief the case should not be dismissed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir. 1973).

The only factual allegation in the complaint specifically referring to McDonald is the assertion that she is the executive director of the State Bar. The other assertions in the complaint refer to "Defendants." The Court finds McDonald has no final authority in setting the amount of the fee payable by Bar members or in the procedures by which the budget is approved. The Board of Bar Commissioners determines and fixes the mem-

bers' annual license fee, SCRA Rule 24–102 (1992 Repl.), and the Board is directed to submit the budget to the Supreme Court, which approves it. SCRA Rule 24–104(A). McDonald was appointed by the Board and "performs such duties as are prescribed by the Board." NM State Bar Bylaws, Art. V, 5.6e, *reprinted in State Bar of New Mexico Bench and Bar Directory* 158 (1992). In other words, although she collects the fees, accepts objections, and submits the proposed budget to the Supreme Court, she performs those duties solely as directed by the Board. *See Bylaws.* Therefore, her indirect participation in the violation of Plaintiffs' constitutional rights is insufficient to defeat a motion to dismiss. *Williams v. Vincent*, 508 F.2d 541 (2d Cir.1974); *Child v. Beame*, 417 F.Supp. 1023, 1026 (S.D.N.Y.1976).

## THE MERITS

Plaintiffs claim Defendants' procedures in collecting the annual fees and dues are unconstitutional in that Defendants fail to:

1. Disclose, prior to collection or assessment of the mandatory dues, an accounting of the major categories of the Bar's expenditures allocating the actual anticipated costs of its activities funded by the mandatory dues;

2. Categorize those expenditures and activities as chargeable or nonchargeable;

3. Present a verification by an independent auditor that the charges attributable and allocated to each activity or category of expenditures are accurate; and

4. Provide a reasonable period of time for the Bar's members to object to Defendants' determination of which expenditures are chargeable or not chargeable.

Plaintiffs allege Defendants have failed for years to provide to them this mandatory disclosure of information and, as a result, Defendants have extracted from Plaintiffs the annual dues assessment without permitting Plaintiffs the opportunity to evaluate the purposes to which their financial support is to be put and to challenge the functions which they are allegedly not legitimately required to support. Plaintiffs seek declarato-

ry and injunctive relief commencing with budget year 1991.

Defendants maintain this "lawsuit proceeds from an unduly expansive view of the associational rights at stake, and hence from a profoundly constrictive view of the activities in which an integrated bar can legitimately engage with its members' mandatory dues...." They argue this view seeks to impose on the Bar each and every one of the minutely and endlessly elaborated rules applicable to labor unions that collect "agency fees"[5] from nonmembers—a jurisprudence whose broad outlines are relevant, if at all, only by analogy.

Defendants contend the Bar's notice of expenditures and the procedures by which Plaintiffs can protest, in addition to the Bar's actual expenditures,[6] are constitutionally adequate. They claim *Keller v. State Bar of California* (addressing integrated state bars) left open the question whether alternative procedures could satisfy the minimum requirements of *Chicago Teachers Union v. Hudson.* They claim Plaintiffs have no constitutional right to a verified, audited disclosure of categories of expenditures. They contend a budget cannot be audited because it is a projection, not a record of past events. The Bar provides an end-of-year financial statement audited by an independent auditor. Defendants contend this statement, the budget, and the articles published throughout each year in the Bar Bulletin, regarding the activities of committees and task forces, supply sufficient information to enable members to make a reasonably informed judgment as to whether to object to the germaneness of the Bar's proposed expenditures. And, in the unlikely event members still feel in the dark about the source of the figure for their dues, "the beauty of a small state bar like New Mexico's is that they can simply pick up the phone or put pen to paper and ask."

Defendants further argue the New Mexico Bar's system is a "pre-collection" one and because the system described in *Hudson* and its progeny are "post-collection" ones, the *Hudson* guidelines are not applicable to the New Mexico Bar's procedures. Defendants additionally contend that limiting the time to object to the budget to fourteen days is a sufficient amount of time for those who make their living crafting legal arguments. And finally, Defendants note that Plaintiff Ellen Pinnes was the only member who objected to a proposed budget. They claim Plaintiffs cannot object to the Bar's objection procedures without ever having exhausted their remedies by availing themselves of the procedures.

■  Contrary to Defendants' contentions, cases addressing the constitutionality of union nonmember fees are inextricably entwined with the constitutional mandates concerning integrated bars. Although the courts have recognized the constitutionality of integrated state bars for some time, *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1960) (lawyer could be constitutionally compelled to join and financially support state bar association even though the organization engaged in some legislative activities), the union cases are unquestionably the cornerstone for interpreting the law applicable to integrated bars.

In the seminal case of *Abood v. Detroit Board of Education,* 431 U.S. at 234–35, 97 S.Ct. at 1799, the Court stated, "[A]t the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the state." The Court held the nonunion employees' rights of freedom of expression and freedom to associate for the advancement of ideas or to refrain from doing so precluded the union's spending a part of the employees' required service fees to contribute to political candidates and to express political views not germane to its duties as exclusive bargaining representative.

*Hudson,* 475 U.S. at 292, 106 S.Ct. at 1066, augmented *Abood* by holding that procedural safeguards are necessary to prevent compul-

---

5. Agency, or fair share, fees are assessed by unions against nonunion employees who benefit from the union's bargaining and contract administration.

6. The germaneness of the actual and proposed expenditures is not before the Court.

sory subsidization of ideological activity by nonunion employees who object thereto while at the same time not restricting the union's ability to require an employee to contribute to the cost of collective-bargaining activities. Because the union required nonunion members to pay ninety-five percent of the union's annual expenditures without disclosing the reasons why, the *Hudson* Court held the union's procedures were constitutionally defective.

The Court held that nonunion members who were required to contribute to union dues must be afforded the following minimum procedures: (1) an adequate explanation for the basis for the fee, (2) a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and (3) an escrow for the amounts reasonably in dispute while such challenges are pending. *Id.* at 304–07, 106 S.Ct. at 1074–76. "[A]dequate disclosure surely will include the major categories of expenses, as well as verification by an independent auditor." *Id.* at 307, n. 18, 106 S.Ct. at 1076, n. 18. Adequate disclosure must identify and presumably justify the chargeable expenditures, rather than merely acknowledging nonchargeable expenditures and thereby treating the balance as chargeable by implication. *See id.* at 306–07, 106 S.Ct. at 1075–76. Absolute precision cannot be expected or required; "for instance, the union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year." *Id.* at 307, n. 18, 106 S.Ct. at 1076, n. 18.

The Court restated that it was the union's burden to show entitlement to the fees collected from the nonmembers; it is the dissenters' burden to raise the objections. *Hudson,* 475 U.S. at 306, 106 S.Ct. at 1076. "Basic considerations of fairness, as well as concern for the First Amendment rights at stake, also dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee.... [R]equiring the potential objectors to object in order to receive information ... does not adequately protect the careful distinctions drawn in *Abood.*" *Id.*

The *Hudson* Court did not consider the substantive issue of whether the underlying expenditures were germane, determining that resolution of the constitutional nongermaneness question would not lead to appreciably different constitutional requirements. *Id.* at 304, n. 13, 106 S.Ct. at 1074, n. 13. However, the court of appeals in *Hudson* noted that "[j]ust the danger (as distinct from actuality) of depriving people of the freedom of expression guaranteed by the First Amendment has led courts to invalidate procedures that created the danger." *Hudson,* 743 F.2d 1187, 1192 (7th Cir.1984), *aff'd,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).

Eleven years ago, following the lead of *Lathrop v. Donohue* and *Abood v. Detroit Board of Education,* this Court held the New Mexico Bar may exact dues to support only those duties and functions of the Bar which serve important or compelling governmental interests. *Arrow v. Dow,* 544 F.Supp. 458 (1982). In doing so, the Court stated, "The First Amendment does not distinguish between lawyers and other occupations. Unless there is an important government interest requiring otherwise, lawyers are entitled to the same protections from the compelled support of ideas that are afforded labor union members." *Id.* at 460–61. The Supreme Court ratified the rationale in *Arrow v. Dow* when it held *Abood* and *Hudson* applied to integrated state bars. *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). The Court found that the "legislative recognition that the agency-shop arrangements serve vital national interests in preserving national peace ... indicates that such arrangements serve substantial public interests as well. We are not possessed of any scales which would enable us to determine that one [state bar or labor union] outweighs the other sufficiently to produce a different result here." *Id.* at 13, 110 S.Ct. at 2236. Consequently, the *Keller* Court reiterated that the procedures set forth in *Hudson* were a minimum, but left open the question of whether one or more alternative procedures would satisfy the *Hudson* obligation. *Id.* at 17, 110 S.Ct. at 2237.

*Keller's* minimum procedural mandate renders Defendants' argument regarding the applicability of union cases palpably

void. Furthermore, it underscores the weakness of their argument that New Mexico's "post-collection system" distinguishes this case from those upon which Plaintiffs rely. While, as Plaintiffs note, the timing of the dues collection is essential with regard to an organization's duty to escrow, the Bar's duty to provide *Hudson/Keller* disclosures and procedures is an independent constitutional minimum requirement in and of itself. *Hudson*, 475 U.S. at 303–04, 309–10, 106 S.Ct. at 1074, 1077–78.

Nor does the fact that only one Bar member, Ellen Pinnes, ever questioned a proposed budget preclude Plaintiffs from challenging the constitutionality of the proposed budgets and the objection procedure. Availing themselves of the objection procedure "is unimportant if the procedure violates their constitutional rights." *Lowary v. Lexington*, 903 F.2d 422, 430 (6th Cir.1990) (quoting *Hudson*, 743 F.2d at 1184). And indeed, the October 9, 1991, letter from Pinnes to the Bar President merely highlights the unconstitutionality of the Bar's disclosures—members must object in order to receive adequate disclosure. *Hudson*, 475 U.S. at 306, 106 S.Ct. at 1075. Defendants' argument that a member "pick up the phone or put pen to paper" is a distinct diversion from Supreme Court precedent.

■ This precedent requires Defendants to topically categorize expenditures by amount spent and to allocate these expenditures into chargeable and nonchargeable activities so that a Bar member has sufficient information to decide whether to object. *Hudson*, 475 U.S. at 305–07, 106 S.Ct. at 1075–76; *Dashiell v. Montgomery County*, 925 F.2d 750 (4th Cir.1991) (union supplied adequate information to enable nonunion employees to decide whether to object). Additionally, an independent auditor must verify whether the amounts assigned to the catego-

ries and claimed to be chargeable are true. *Dashiell*, 925 F.2d at 756–57.

The Court finds the Bar's procedures do not meet the constitutional requirements mandated by *Hudson/Keller*. Although Defendants present to the Bar members an annual proposed budget and an annual report, the latter of which is audited by an independent auditor, it does not categorize its expenses into chargeable and nonchargeable expenses. As this categorization is nonexistent, an independent auditor cannot verify chargeable and nonchargeable expenditures.[7] *See Hohe v. Casey*, 727 F.Supp. 163, 167 (M.D.Pa.1989), *aff'd in part, vacated in part*, 956 F.2d 399 (3d Cir.1992) ("The Court could ... not have intended that the independent audit stop at the basic financial statements.").

The Court realizes that an auditor would not be "auditing" the proposed budget, as it is a projection. Other courts, including *Hudson*, 475 U.S. at 307, n. 18, 106 S.Ct. at 1076, n. 18, have recognized the inability to verify future expenditures with precision. *See Dashiell*, 925 F.2d at 757. Nevertheless, the Bar can strike a proper balance between precision and reasonable accuracy by relying on the Bar's actual expenditures during the most recent year for which an audited financial statement is available. *Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 636–37 (1st Cir.1990). Indeed, California and other states have achieved this balance. *California Lawyer*, Disclosure Statement,[8] pp. 76–91; "Rules and Regulations of the State Bar of California, Art. 1A, § 2(B). This Court finds California's method of disclosure reasonable and achievable and recommends Defendants scrutinize it when complying with this order.

■ In addition to the unconstitutionality of Defendants' disclosure, the Court also

---

7. However, the auditor's function is not to verify the Bar's legal determination of the allocation of all expenditures to each particular category. *Dashiell v. Montgomery County; Tierney v. City of Toledo*, 917 F.2d 927 (6th Cir.1990) (remanded because audited statement did not state what the auditor did or what procedures were followed); *Andrews v. Education Ass'n*, 829 F.2d 335, 340 (2d Cir.1987); *but see Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 636–37

(1st Cir.1990) (independent accounting should categorize activities as suitable or unsuitable for mandatory funding).

8. The exact title of this disclosure statement is not clear to the Court; the pages were attached to Plaintiffs' memorandum in support of preliminary injunction, and did not appear to include a title page, if there actually was one.

finds that members are not given a reasonable amount of time in which to object to the proposed budget. Objections must be submitted to the Executive Director of the State Bar within fourteen days from the date of publication. If three days for mailing were factored in to the time allotted for objections on both ends of the time frame, that would leave members with approximately eight days in which to object. This is insufficient. *See Lehnert v. Ferris Faculty Ass'n,* 643 F.Supp. 1306 (W.D.Mich.1986) (requiring at least two weeks after receipt of adequate information).

Finally, should there be objections the Board does not accept, an impartial decisionmaker must consider these objections. The Court makes no determination as to whether the New Mexico Supreme Court would be an impartial decisionmaker, as the issue is not squarely before the Court; however, *Hudson* held the impartial decisionmaker may "not represent the [Bar's] unrestricted choice." *See also Tierney v. City of Toledo,* 824 F.2d 1497, 1506–07 and n. 3 (6th Cir.1987) (discussing but not deciding whether union should unilaterally pick arbitrator); "Rules and Regulations of the State Bar of California," Art. 1A, § 3(D).

In conclusion, the Court finds the Bar's financial disclosure and procedures for objection violate Plaintiffs' constitutional rights and, therefore, Defendants have not met their burden to show entitlement to the fees collected from the Bar members.

Wherefore,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant Linda McDonald's February 16, 1993, motion to dismiss be, and hereby is, granted.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to declaratory judgment that Defendants' budget disclosures and procedures for objection be, and hereby are, declared unconstitutional.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to injunctive relief.

**IT IS FURTHER ORDERED** that Defendants' February 16, 1993 motion to dismiss

and April 23, 1993 motion for summary judgment be, and hereby are, denied.