Thomas L. POPEJOY, Jr., et al., Plaintiffs,

v.

NEW MEXICO BOARD OF BAR COMMISSIONERS, et al., Defendants.

Civ. No. 92–1462 JB.

United States District Court, D. New Mexico.

Jan. 25, 1994.

Richard J. Rubin, Santa Fe, NM, William G. Walker, Walker & Van Heijenoort, Albuquerque, NM, for plaintiffs.

Andrew G. Schultz, Charles K. Purcell, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, NM, for defendants.

### MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER came on for a hearing on December 23, 1993, on Plaintiffs' December 15, 1993, motion for emergency injunctive relief and motion to enforce judgment. The Court, having heard the arguments of counsel and reviewed the submissions of the parties finds that Plaintiffs' motion for emergency injunctive relief is not well taken. Plaintiffs' motion to enforce judgment is well taken in part and the Court grants supplemental relief to enforce the Judgment of this Court entered on August 27, 1993.

As to Plaintiff's motion for emergency injunctive relief, Plaintiffs claim immediate intervention by this Court is necessary because State Bar members must pay their dues by January 1, 1994. If a member fails to pay, he or she risks disbarment, according to Plaintiffs. There is no factual basis to Plaintiffs' claim. In practice, while Bar dues must be paid by January 1, no action is taken by the State Bar to secure payment until March 31. N.M. Rule 24–102 (Michie 1992

Repl.). Defendants indicated in their pleadings and at oral argument that objections to the State Bar's budgets are expected to be resolved by January 1, 1994, and if not, definitely by March 31, 1994. Based upon these representations by Defendants and Rule 24–102 of the Rules of the Supreme Court, the Court finds that Plaintiffs have failed to show that emergency relief is justified. Plaintiffs fail to establish that they will suffer irreparable injury unless the injunction issues, a necessary element for injunctive relief. *SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991) (citing *Otero Savings and Loan Ass'n v. Federal Reserve Bank of Kansas City, Missouri*, 665 F.2d 275, 278 (10th Cir.1981)).

### *Motion to Enforce Judgment*

1. **Categorize Expenditures by Activities**

Plaintiffs allege that in virtually all material aspects, Defendants have failed to meet the requirements of this Court's August 26, 1993, Memorandum Opinion and Order. The Court finds merit in certain inadequacies alleged by Plaintiffs.

 This Court held the law required Defendants to "topically categorize expenditures by amount spent and to allocate these expenditures into chargeable and noncharge-able activities so that a Bar member has sufficient information to decide whether to object." *Popejoy v. New Mexico Board of Bar Comm'rs*, 831 F.Supp. 814, 820 (D.N.M. 1993) (citing *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 305–07, 106 S.Ct. 1066, 1075–76, 89 L.Ed.2d 232 (1986)). Plaintiffs correctly allege that approximately one-half of the Bar's expenditures for each of the years 1991–1994 is designated as a single item disclosed as "General Administration." "General Administration" is not an "activity" amenable to a determination of chargeability. While this Court stated that "[a]bsolute precision cannot be expected or required," 831 F.Supp. at 819 (citing *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18), Defendants have gone beyond any reasonable imprecision by allocating fifty percent of its budget to a function inherently incapable of being gauged as chargeable or noncharge-able by Bar members. The Court is particularly concerned that lobbying does not appear in the Bar's budgets as an activity. Commissioner Thomas Popejoy attests that Bar staff provide support to lobbying and this cost is included within the gross figure for "General Administration." Plaintiffs' Memorandum of Law in Support of Motions to Enforce Judgment and for Emergency Injunctive Relief, Popejoy Aff., paragraph 4. This hidden expenditure is problematic because depending upon the nature of the bills under consideration by the legislature, lobbying is precisely the type of political activity to which a Bar member might want to object as nongermane to regulating the legal profession or improving the quality of legal services. *See Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 632 (1st Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992) (impermissible to use mandatory bar dues for lobbying based on Bar's "partisan political views rather than on lawyerly concerns.").

A similar problem exists with the Bar's expenditures for public relations and charitable activities which Commissioner James Branch, Jr. attests are engaged in by the Bar. Plaintiffs' Memorandum of Law in Support of Motions to Enforce Judgment and for Emergency Injunctive Relief, Branch Aff., paragraph 14. While the direct costs of certain charitable activities are contained in the Bar's budgets, Bar members cannot tell what indirect costs, principally Bar staff time, were expended on charitable activities. Defendants cite *Dashiell v. Montgomery County*, 925 F.2d 750 (4th Cir.1991) in which the Fourth Circuit approved a blanket assignment of "data processing" and "office expenses" to the category of chargeable expenses. *Id.* at 757. While correct, the more relevant finding in *Dashiell* was that the defendant Union assigned to each category a dollar amount "from the overall expenses of the Union." *Id.* Thus, overhead or "general administration" expenses were allocated to activities in *Dashiell*. Further, in *Tierney v. City of Toledo*, 917 F.2d 927 (6th Cir.1990), the Sixth Circuit rejected defendant Union's contention it need not account for the use of certain expenses *until* an objection was raised. *Id.* at 937. "Non-members are con-

stitutionally entitled to disclosure of these payments *prior to objecting* so that they may evaluate the basis for an objection and consequently protect their First Amendment rights." *Id.* (emphasis in original).

■ ° This precedent requires Defendants to provide a more detailed breakdown of the fifty percent of its budget labeled "General Administration" such that Bar members can determine how program activities were supported. In particular, the Court finds that Defendants must allocate the expenses for "Administrative Offices Salaries" to program activities so that Bar members have sufficient information to decide whether to object to any activity as nonchargeable. The Court notes Defendants' contention that it followed California's method of addressing administrative overhead in response to this Court's direction that it look to the California State Bar's disclosure statement. The Court has two observations. First, the Court did not intend by stating that California's method of disclosure was "reasonable and achievable," 831 F.Supp. at 820, to suggest it met the requirements of *Hudson/Keller* in all details. California's current system has not been analyzed by the courts. Second, while it is true California includes a general "administrative overhead" category, the Court notes that chargeable administrative expenses were allocated to specific program activities based upon the ratio of the program's expenditures to total program expenditures. Defendants' Response to Plaintiffs' Motions to Enforce Judgment and for Emergency Injunctive Relief, Throckmorton Aff., Exhibit 1, page 12. Defendants have failed to similarly allocate administrative overhead to program activities.

■ The Court recognizes that Defendants' could not get auditor verification of its allocation of general administration to program activities because of insufficient recordkeeping by Bar employees, principally time tracking. At oral argument, Defendants failed to explain why requiring Bar employees to keep contemporaneous time records of their activities imposed an unreasonable burden. Defendants reexamined their practices and now state that a timekeeping system for Bar employees would begin on January 1, 1994. Defendants' Supplemental Brief Concerning Plaintiffs Motion to Enforce Judgment. The Court approves this decision and expects the time tracking to provide the documentation necessary for auditor verification of the 1995 budget as well as future years.

## 2. General Objections

■ Another defect alleged by Plaintiffs is Defendants' failure to provide for "general" objections. As evidence of this defect, Plaintiffs point to the form printed at the end of each year's budget material. This objection form requires a dissenter to identify him or herself and then states, "I challenge the following expenditures:" with sixteen blank lines provided to describe the challenge and further directions to "use additional paper as necessary." The Court finds no merit to Plaintiffs' contention that this form prevents general objections. As highly skilled advocates, members of the Bar would surely not be so intimidated by the objection form as to feel compelled to fill all sixteen lines with detailed objections.

■ Notwithstanding the Court's finding that Defendants have not prohibited general objections, the Court further finds that at this stage of the proceedings, generalized objections to all the Bar's expenditures without any elaboration are improper. Plaintiffs correctly assert that a challenger's only burden "is simply the obligation to make his objection known." *Hudson,* 475 U.S. at 306, n. 16, 106 S.Ct. at 1076 n. 16. Plaintiffs, however, mischaracterize *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) when they assert that *Abood* stands for the proposition that objectors may not be asked to specify the expenditures they are challenging. *Abood* found it unconstitutional to require objectors to specify which nongermane activities they supported and which they opposed because this infringed on privacy of association and belief guaranteed by the First Amendment. *Abood,* 431 U.S. at 240–41 & n. 42, 97 S.Ct. at 1803 n. 42. In the case at bar, Defendants claim all expenditures are for germane activities. Plaintiffs disagree. At this stage, the impartial decisionmaker must decide whether Defendants correctly characterized all of its

activities as germane. This process will not be facilitated by highly generalized objections to all of Defendants' expenditures. Rather, an objector may be required to identify the activities being challenged, but may not be required to explain the motivation for the objection or why he or she believes the activity is nonchargeable. *Gibson v. Florida Bar*, 906 F.2d 624, 632 (11th Cir.1990), *cert. dismissed*, —— U.S. ——, 112 S.Ct. 633, 116 L.Ed.2d 432 (1991). Once the impartial decisionmaker reviews all the challenged activities, if it is determined that nonchargeable activities do exist, any Bar member may file a general objection entitling him or her to a rebate for all nonchargeable activities for the 1991–1994 period. In future years, if nonchargeable activities are identified in the budget, Bar members may generally object and deduct from their dues that portion supporting these nonchargeable activities. *Tierney v. City of Toledo*, 824 F.2d 1497, 1503 (6th Cir.1987).

### 3. Impartial Decisionmaker

Plaintiffs contend the Bar's procedures improperly permit the New Mexico Supreme Court to serve as the impartial decisionmaker reviewing unaccepted objections. The Court's previous Memorandum Opinion and Order did not address this issue as it was not squarely before the Court. *Popejoy*, 831 F.Supp. at 821. The Court finds that the record is minimal on the role of the State Supreme Court in the Bar's budget process. At oral argument, the parties agreed to stipulate to the involvement of the New Mexico Supreme Court in the Bar's budget process to the extent the Supreme Court directs the Bar to make expenditures and its role in reviewing and approving the budget in light of objections received.

The Court acknowledges the Supreme Court's decision not to hear any challenges to the 1991–1994 budgets and to solicit from challengers and the Bar recommendations for the appointment of some other impartial decisionmaker. Defendants' Response to Plaintiffs' Motions to Enforce Judgment and for Emergency Injunctive Relief, Jaramillo Aff., Exhibit C. This Court has no doubt that the Supreme Court is keenly sensitive to the need for perceived impartiality as well as actual impartiality. While the Supreme Court has superintending control over the judicial branch of state government, a process whereby the Supreme Court both develops and approves the Bar's budget and also resolves challenges to that same budget might raise the specter of partiality. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980) (due process protects both the appearance and the reality of fairness). This Court will withhold further consideration of this issue until the record is more fully developed.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiffs' motion for emergency injunctive relief be, and hereby is, denied.

**IT IS FURTHER ORDERED** that Defendants allocate the expenditures for "Administrative Offices Salaries" for 1991–1994 to program activities.

**IT IS FURTHER ORDERED** that Defendants identify expenditures for lobbying and public relations and charitable activities for 1991–1994, including Bar staff support.

**IT IS FURTHER ORDERED** that commencing with the entry of this Order, Defendants institute a timekeeping system for Bar employees to keep contemporaneous time records of their activities.

**IT IS FURTHER ORDERED** that the parties attempt to stipulate to the role of the New Mexico Supreme Court in the Bar's budget process.